OPINION of the Court, by
Judge Owsley.
— .-Wilson being the owner of 500 acres of land, on the waters of Licking, in the year 1789, sold to Stark 200 acres, to be laid off in a square out of the eastwardly end thereof, apd gave his obligation to convey the same by a general warranty deed.. Some time after this, Stark purchased of James Dinwiddie his claim of 450 aches, the greater part of which conflicted with the tract of Wilson, and included the most of the 200 acres which Stark had previously purchased of Wilson. To ascertain and settle the validity of these claims, Stark before he obtained the legal title brought su¡t in the name of Dinwiddie; against Wilson ; and during the pendency ol the suit Stark and Wilson compromised the contest, and reduced the terms of their agreement to writing, Wilson agreed to relinquish his claim to the land for which he had given his obligation to convey to Stark, and pay Stark for so much thereof as was included in Dmwid-die’s claim, according to its value as wood land, to be ascertained by the valuation of James Brown, William Suddith and Charles Smith, jun. ; and Stark was to receive at its valuation other land of Wilson whereon Josiah Richards then lived, in discharge of so much of the demand against Wilson. The parties farther agreed that upon a compliance with their then agreement the suit brought by-Stark in the name of Dinwiddie should be dismissed.
Brown, Suddith and Smith having failed to value the lands, other valuers by mutual, consent were orally agreed on by the parties, These men went on the land, and in the presence of the parties valued the land according to agreement, and to the mutual satisfaction of bmh Stark and W'lson, Stark then took possession of Richardses place, aad has held the possession thereof *477 ever since ; atid Wilson has since paid the balance which fell due Stark according to the valuation as then made, after deducting the value oí Richards’s place.
Some time subsequent to the valuation being had, Wilson, not having conveyed anv part of the land, brought an ejectment to recover the possession thereof from Stark, '
Stark having no legal defence to make, exhibited his bill in equity, with an injunction, for a specific performance of the agreement of eompromise.
Wilson by his answer impeaches the validity of Din-widdle’s claim, denies that Stark had any right thereto previous to the agreement of compromise, alleges the compromise was produced by the fraud and artifice of Stark, and insists that it should not be specifically executed, and relies on the statute of frauds, &c.
On a final hearing the court below decreed that Wilson should convey by a special warranty deed the 200 acres first purchaséd bv Stark, and dismissed Stark’s bill and dissolved his injunction as to the residue of the land. From this decree Stark has prosecuted this appeal.
The evidence in the cause satisfactorily and conclusively shews Dinwiddie had a claim to the land, and that Srark had purchased the same before he prosecuted suit thereon against Wilson. Whether Dinwiddle’s or Wilson’s was the superior claim, we shall not, nor is it necessary we should m the consideration of this case determine : for as Stark was really in equity the owner of Dinwiddle’s claim, and was prosecuting suit thereoq for the purpose of its final adjustment, the agreement made between him and Wilson compromising the contest, unless procured through the fraud or artifice of Stark, or liable to some other equitable objection, should be carried into specific execution.
The charge of Wilson that the agreement of compro, mise was procured by the fraud ol Stark, is altogether Unsupported by proof, unless it is to be inferred from the terms of the agreement itself. Such an inference we are however of opinion cannot be from thence deduced. The circumstance of Wilson having agreed to pay .more than he had received from Stark for the land, tjoes not furnish sufficient grounds from whence fraud can be inferred. To what extent Stark, on the event of *478 DInwiddie’s claim proving the better one, would have been entitled to recover upon the covenant of Wilson,to. convey the land by general warranty deed, seems to have been matter of opinion between the parties ; and at that; time Stark might very jhonesdy have thought he would be entitled to more than by the compromise Wdson agreed to pay.
It is true by the terms of the agreement Wilson became bound to pay' Stark more .than according to the rules of law as now understood he would have been liable, in the event of Dinwiddie’s claim proving to be the superior one, This circumstance alone cannot however justify the refusal of a court of equity to carry the agreement into specific execution s for what Wilson should pay was as much a matter of contest and as properly th^ subject of compromise as the relative dignity of the claims; and the parties having settled yhe matters in dispute, and made their own terms, the agreement shouid have the aid of a court of equity, unless the objection relied on by Wilson that the agreement is within the statute of frauds and perjuries, is found to be available.
This objection is endeavored to be maintained on the grounds that the valuation of the lands was not made by the valuers named in the written agreement, but by others verbally agreed on by the parties. This objection, if at all available, certainly comes with a very ill grace from Wilson, after mutually agreeing vvith Stark to substitute those men by whom the valuation was made, and afterwards acquiescing in their valuation and consummating it by’ the pay'ixieuc of the amount above the value of Richards's place, the possession whereof was also received by Stark in consequence of the valuation.
it cannot however be admitted that the agreement comes within the statute. It is in writing, and signed by the parties ; and though the parties thereto by subsequent parol agreement substituted other valuers tq ascertain the value of the land, that arrangement cannot affect the right of Stark to a conveyance of the land agreed to be conveyed by the written agreement.
The subsequent parol agreement did not alter the rights of the parties under the written contract, but only related to and regulated the manner of ascertaining the *479 value of the land. We are of opiniorf therefore the agreement does not come within the statute, and that Stark has manifested a good right to the aid of a court of equity to decree a specific execution of the agree* ment.
The decree of the court below must therefore be re* versed, the cause remanded to that court and a decree there entered for a conveyance to be made with a clause of special vvarranty by NVilson to the 200 acres first purchased by Stark, and'the place called Richards’s place, delineated on the plat by the figures 12, 10, 13, 14, with black lines ; and the injunction of Wilson be made perpetual to that extent.