## Posey, et al. v. Kimsey.

(Decided January 16, 1912.)

### Appeal from Henderson Circuit Court.

1. Contracts—Specific Performance—Agency.—When a writing was signed by A authorizing B to sell his land to C, and to buy for him C's land, the writing when signed by C constituted B the agent of both parties.

2. Same—Sufficiency of Petition—Tender of Title and Defects therein.—A petition that tenders a performance of the contract according to its terms is good, although it may not aver that the· plaintiff had a good title, as it is encumbent upon the defendant if he wishes to question the title to point out the defects, if any, that exist.

3. Same—Description of Land—When Sufficient.—A contract proposing to sell "my farm known as the Jno. Baskett home farm," although it did not contain any other description of the land, was not void under the statute of frauds. If a writing contains such a description of or reference to the land as that it may be identified by parol evidence it will be sufficient.

4. Same—Time to Remove Defects in Title.—Ordinarily, time will be allowed the vendor to remove defects in his title, and specific performance will be decreed, although the title may not be good

when the contract is made or the suit brought, if it is good when the decree is entered; and, if time is not of the essence of the contract the court will permit the vendor if he can do so within a' reasonable time to supply the defects in his title so as to comply with his contract.

5. Same—Liens Upon Land of Vendor—Effect of.—If there are liens upon the land of the vendor that he is seeking to compel the vendee to accept, and they are less than the amount of the purchase price that the vendee has agreed to pay, the existence of the liens will not furnish a reason for not enforcing the contract, as the liens can be discharged out of the money due by the vendee.

6. Same—Offer of Vendor to Release Lien and Tender Good Title—Effect of.—When there is a lien on the land of the vendor, which he offers to remove, he need not do so until the vendee expresses a willingness to take the title freed from the lien or the court indicates that he will compel him to do so if the lien is released.

7. Same—Discretion of Court in Ordering Specific Performance.—The discretion vested in the court in cases seeking the specific performance of contracts is not an arbitrary but a sound judicial discretion controlled by established equitable principles. There is no more reason why a valid executory contract should not be enforced than there is why any other valid contract should not be enforced.

MONTGOMERY MERRITT, CLAY & CLAY for appellants.

YEAMAN & YEAMAN for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

On September 5, 1910, the appellee, Kimsey, signed and delivered to James E. Cheatham, a real estate agent in Henderson, Kentucky, the following paper:

"I hereby authorize Jas. E. Cheatham to make in the next five days the following trade, namely: I will sell my farm, known as the Jno. Baskett home farm, of which I am to cut off in this sale 250 acres, taking in all the northwest of the Texas R. R. track and enough of the south side, east of the railroad, lying next R. H. Soaper's cut parallel to Soaper line to make the 250 acres, at the price of two hundred ($200) dollars per acre, and possession to be given Jan. 1, 1911, and the lease I have with Lee Kimsey is to be assigned to pur-chase for year 1911. I am to throw in all my interest in the mules, ten or twelve head, and farming equipments, we own jointly, mineral rights reserved, and I agree to pay in case of above sale to Reichert and Posey, one

hundred ($100) dollars per acre for their Anna Yeaman farm of 500 acres, the lease of present tenant to be assigned to me for year 1911. Reichert and Posey to have rent for 1910 and twelve months to take off half of the timber from Jan. 1, 1911, and the other half by January 1, 1912. Reichert and Posey to reserve all the timber and posts for said two years they may take off, and to reserve all the coal and mineral rights, and all gas rights to and under said 500 acres of land. And Reichert and Posey are to pay all ditch taxes on the 500 acres up to the date of deed.

On September 6th, the appellants, Reichert and Posey, signed on the paper the following acceptance:

"We accept the above purchase, and sale and agree to make deed immediately as soon as we can."

Kimsey refusing to perform his part of the contract, this action for specific performance was brought against him by Posey and Reichert, the prayer of the petition being that:

"The defendant be required to perform specifically the terms and conditions of the written contract aforesaid, and that he be required to execute and deliver to them a deed conveying said 250 acres of land and his interest in said personal property, in exchange for the deed herewith tendered to him; and if for any reason this can not be done, then they pray that the defendant be required to accept the deed from them herewith tendered, and that they recover of the defendant the sum of $50,000, with interest from the 21st day of September, 1910; that to secure same, they be adjudged a lien on the said 500 acre tract of land, and that their lien be foreclosed and said land or such part thereof as is necessary for that purpose be sold to satisfy said demand; and they pray for their costs herein, and all proper and equitable relief."

With the petition, a sufficient deed, reciting a cash consideration of $50,000, made by Posey and Reichert to Kimsey for the 500 acres of land was tendered.

After a general demurrer to the petition was overruled, Kimsey filed an answer, in which after traversing generally the averments of the petition, he set up (1) that the paper delivered to Cheatham was intended to be signed and executed in duplicate and that it was not to be in force until so executed, and that it was never executed in duplicate or at all, and never went into effect. (2) He further averred that the paper was not a

contract or evidence of a contract, that it did not locate, describe or designate any land, and was within the statute of frauds and void for uncertainty. (3) He denied that within five days after the execution of the paper he had any notice that the proposition was accepted, and denied that any acceptance of the proposition contained in the paper delivered to him by Cheatham was ever tendered to or received by him. (4) He further stated that on September 5th, and at the time the suit was instituted, there was a valid subsisting lien upon the 500 acres of land for $16,000, and for this reason specific performance of the contract should not be enforced.

In reply, after controverting the affirmative matter in the answer, Posey and Reichert charged that Kimsey knew at the time he delivered the paper sued on to Cheatham that there was a lien on the 500 acres of land for the amount mentioned, and that there was also a lien upon his 250 acres of land for several thousand dollars, and that it was agreed and understood that these liens were to be adjusted in a satisfactory manner when the trade was closed.

The evidence of Posey and Reichert was in substance that the paper delivered by Kimsey to Cheatham was signed by them on September 6th, and given to Cheatham, and on the same day they saw Cheatham hand to Kimsey the paper they had signed, and observed Kimsey give it back to Cheatham. They testified that on September 8th, they met Kimsey in company with Cheatham, and told him that they were ready to make deeds, and that Kimsey replied that his wife would not sign the deed to his land, and that he had concluded that he did not desire to close the trade. It also appears that on September 21st, they offered in a writing addressed to Kimsey to satisfy and have released the lien on the 500 acres of land whenever he was ready to accept the deed; and also notified him that if he preferred he could retain a lien upon the 250 acres of land he was to convey to them to protect him from any loss on account of the lien on their land. Cheatham testifies in substance that shortly before the paper delivered to him by Kimsey was written, but on the same day, Kimsey proposed to him to negotiate the trade and that in the course of the conversation the lien upon the land owned by Kimsey as well as the encumbrance upon the land owned by Posey and Reichert was discussed. That when the conversation ended, the paper was prepared in duplicate, Kimsey re-

taining one copy and delivering the other to him. That on the following day, after Posey and Reichert had accepted the proposition, he handed the executed paper to Kimsey, who read it over, and returned it to him.

Kimsey testified in substance that he signed the paper, and that on the following day Cheatham informed him that the proposition had been accepted by Reichert and Posey and after reading to him their acceptance he put the paper into his pocket. He also admitted that on September 8th, he notified them that he and his wife had concluded that they would not perform the contract; that he knew there was a lien upon the 500 acres of land, but denied that there was any agreement or arrangement made about adjusting this lien or the lien upon his land, which lien he removed subsequent to the contract.

After considering the case, the lower court dismissed the petition, and the plaintiffs appeal.

It is apparent from the evidence that on the 5th of September, Kimsey signed and delivered to Cheatham the paper in controversy, and that on the following day the proposition contained in it was accepted in writing by Posey and Reichert, and that on the same day Kimsey was notified of the fact that they had accepted it. It is also very clear that in a few days after being notified that his proposition had been accepted, he concluded not to execute the contract. Aside from the legal questions presented, there is little doubt that upon the facts Posey and Reichert made out a case against Kimsey entitling them to relief.

The first proposition presented by counsel for appellee is that the petition was defective in failing to allege that Posey and Reichert were the owners of the land, and had a good title thereto. Upon this point the averments of the petition are that the plaintiffs were:

"Ready and willing to carry out the terms of said written proposition and acceptance, and have offered to deliver to the said defendant a deed to the Anna Yeaman farm of 500 acres with the conditions set forth in said agreement embodied therein, upon the execution and delivery to them of a deed from the defendant to said 250 acres of land and the defendant's interest in said personal property, upon the conditions set forth or upon the payment to them of $100 per acre for said 500 acre farm; * * * that on September 21, 1910, they executed the deed heretofore mentioned to their attorneys, with instructions to deliver the same to the said defendant upon

the delivery to them of a deed from the said defendant conveying to these plaintiffs the 250 acre tract of land."

In addition, they averred that on September 21, 1910, they notified him in writing that they were ready and willing to perform their part of the contract. The deed, dated September 21, 1910, which was duly acknowledged by the grantors and tendered to Kimsey, recites that "for and in consideration of the sum of $50,000" Posey and Reichert convey to him 500 acres of land, describing it. In short, the petition tendered a performance of the contract according to its terms. The paper evidencing the contract between the parties did not mention the character of title that either was to convey to the other, but it evidently contemplated that each had and would convey a good title to his land, but we do not regard it as an indispensable averment that the plaintiff in seeking to enforce a contract like this should in apt terms specify the character of title he proposes to convey. When the petition, as in this case, tenders a performance of the contract in accordance with its terms, it is incumbent upon the defendant to point out the defects, if any, in the title offered. And if such defects are shown to exist as can not in a reasonable time—when time is not of the essence of the contract—be remedied by the plaintiff, relief will be denied. This principle was announced in Logan v. Bull, 78 Ky., 607. In that case, in an action for specific performance, it is said:

"The vendor having alleged his readiness and ability to convey, and in this case tendering a deed, the vendee must either allege that he has no title, or, if the title is defective, must point out the defects that they may be remedied, or the contract rescinded if the defect is incurable and such as entitled the vendee to that character of relief. A defect in the title may exist that can be at once remedied, or an apparent defect that, when pointed out, can in nowise affect the title, therefore the necessity of an express denial of any title in the vendor, or a statement of facts showing that his title is defective." To the same effect is Collins v. Park, 93 Ky., 6; Davis v. Dycus, 7 Bush, 4.

The answer of Kimsey did not deny that the plaintiffs had title or point out any defect in the title, except the one relating to the lien. The answer, therefore, did not put upon the plaintiffs the necessity of exhibiting their title, or doing more in respect to it than was neces-

sary to remove the encumbrance; and this they offered to do if Kimsey performed his part of the contract.

Another contention of appellee is that the paper sued on does not evidence a sale or purchase or exchange of land, or any contract between the parties or a contract made by Kimsey. When the paper was signed by Kimsey, it undoubtedly constituted Cheatham his agent to make the contract therein mentioned, and when the offer made was accepted by Posey and Reichert they likewise constituted Cheatham their agent, so that, when the paper was signed by both of the parties, Cheatham became agent of both. In other words, Kimsey authorized Cheatham to sell his land to Posey and Reichert at the price mentioned in the paper, and to buy their land at the price indicated in the paper; and, Reichert and Posey constituted Cheatham their agent to buy the land of Kimsey at the price stated and to sell to him their land at the price mentioned. The contract was the same as if without the intervention of Cheatham the proposition contained in the contract had been made in writing by Kimsey to Posey and Reichert and accepted by them. In Alford v. Wilson, et al., 95 Ky., 506, it appears that the Wilsons authorized in writing Stedman & Bowman to offer Alford $13,650 for a lot in Lexington, which offer Alford accepted in writing. In a suit for specific performance of this contract brought by Alford, the contention was made by the Wilsons that the writing did not constitute either a written contract or a memoranda of a contract, but the court held that it constituted an enforcible contract between the parties, and, in the course of the opinion, said:

"This writing must be regarded as the offer of the Wilsons. Not merely the 'equivalent,' but the very offer to be presented to the vendor, and for what must we say it was so offered? Certainly, for acceptance or rejection; and at the moment of its acceptance the minds of the contracting parties met, and the contract was complete. * * * The writing was intended for Alford's acceptance or rejection, as much so as if it had been addressed to him, saying that the signers 'hereby offered for the property, through their brokers, Stedman & Bowman, the sum of,' etc. And, acting with this end in view and in pursuance of the intention with which the writing was prepared, the brokers did present it to Alford, who, at once, accepted it—his acceptance being likewise in writing. The two writings thereby and at once

became the contract of the parties, enforceable not alone against the Wilsons, but against Alford as well. The brokers stood in the shoes of their principals, and made not their own offer but that of their principals. The offer was continuous and bound the principals upon its acceptance, and after that, it was equally binding on Alford.'' To the same effect is Evans v. Stratton, 142. Ky., 615.

Another objection urged to the enforcement of the contract is that the paper sued on does not contain such a description of the land of either of the parties as will satisfy the statute of frauds. The well established rule in this State is that if a writing contains such a description of or reference to the land as that it may be identified by parol evidence, it will be sufficient. It is not essential that the paper itself shall contain such a description of the land as that it may be identified or exactly located by the mere reading of the paper. The cases. upon this subject are set out in Bates v. Harris, 144 Ky., 399. In that case the writing between Bates and Harris by which Mrs. Bates sold her farm to Harris, describes it as follows:

''The said Bates of the second part has this, the above date, bargained and sold her Muddy Creek farm to said Harris, first part, for the consideration of $90 per acre. The farm embraces 130 acres.''

The writing did not set out in what county or State the land was located, but the court held the description sufficient upon the ground that the description "her Muddy Creek farm" designated with sufficient certainty the land proposed to be sold. As illustrating the importance that is attached to a description that designates the land as being "owned by" or "the property of" the person sought to be bound by the contract, we call attention to the case of Campbell v. Preece, 133 Ky., 572. In that case Campbell sold by parol a tract of land situated "On the Shanty branch on left fork of Peter creek, in Pike County, Kentucky." Afterwards, Preece and Campbell entered into a written contract in which it was provided that:

''The said Preece does hereby sell to the said Campbell all the oak, poplar, ash, cucumber, basswood and any other woods that merchantable timber can be obtained from that is now standing on the lands that said Campbell sold to said Preece situated on the Shanty branch

on the left fork of Peter creek, Pike County, Kentucky.''
*   *   *

Afterwards, a settlement of the timber account was made between the parties, and Campbell gave Preece a receipt stating that he had—

"Received of Joseph Preece two hundred and sixty-five dollars as part payment on the land sold him by myself on the Shanty branch."

In a suit by Campbell to recover the land in ejectment on the ground that the sale was in parol, Preece relied upon the receipt executed by Campbell as taking the transaction out of the statute. In holding the writing sufficient, the court said:

"If the writing stated 'the land where Joseph Preece now lives' or the land 'where Joseph Preece lived in 1899,' it would not be questioned that the description would have been sufficient. Parol evidence is always receivable to identify the land spoken of in the writing, but not to designate it. *   *   * If the writing identifies the land, that, of course, ends the inquiry. If it does not identify it, but affords means of identification, that is deemed sufficient. *   *   * All that is required is that it shall be susceptible of certainty. If, when the means are resorted to, it is still left open what lands are meant to be conveyed, the description will be bad. Therefore, it is never good to refer to a future event, as that could not have been certain when the memorandum was made. But generally a reference to an existing or past event is good. There it can be known certainly what was intended; for that which has transpired is changeless. 'The place where I live' identifies one place only, and is susceptible of being shown definitely and unerringly. 'The place I sold to A.' is likewise susceptible of identification; and, if I had sold but one place to A., it is as certain as would have been a more particular description. It is from such instances that the maxim has arisen, 'That is certain which can be made certain.' "
To the same effect is Price v. Hays, 144 Ky., 535.

In the case before us, Kimsey proposed to sell "my farm known as the John Baskett home farm" and Reichert and Posey agreed to sell "their Anna Yeaman farm of 500 acres." Under the authority of the cases cited, it is clear that the description of the land was sufficient. The designation of the Kimsey land as "my farm," and the designation of the Reichert and Posey farm as "their

Anna Yeaman farm" so identified these two tracts of land as that they could be located with certainty.

The suggestion that the prayer of the petition was in the alternative and that the paper was not signed in duplicate or delivered to or accepted by Kimsey, we do not deem of sufficient moment to discuss. This leaves only to be considered, the question that as the land of Posey and Reichert was encumbered by a lien to the amount of $16,000, this constituted a good reason why specific performance should be denied. In disposing of this question, it is of some importance to keep in mind that Kimsey at the time he entered into the contract knew there was a lien on the land of Reichert and Posey although he denies that the matter of adjusting this lien was discussed, and this knowledge on his part removes any element of fraud or concealment in respect to this lien from the case. Of course Kimsey could not be required to accept a deed to the land of Reichert and Posey until this lien was satisfied or adjusted in some manner satisfactory to him. This being so, the question presented is, was it necessary that this lien should have been released before the suit was brought to enforce performance of the contract, or, was it sufficient that Posey and Reichert proposed to, and we must assume in the absence of evidence to the contrary, would have removed this encumbrance before judgment was rendered. If it was indispensable to obtain the relief sought that at the time of the institution of the suit Posey and Reichert should have been in a condition to tender to Kimsey an unencumbered title to their land, the relief sought should have been denied. On the other hand, if Posey and Reichert had the right to perfect their title before judgment was rendered, and to remove any defects existing when the contract was made or the suit was instituted, the fact of the encumbrance did not present an obstacle to the performance of the contract. The question of the right of a party seeking a specific performance to remove defects in his title after the contract has been entered into but before judgment is given granting the relief sought, has come before this court as well as others in numerous cases. The rule is very well settled, that when time is not of the essence of the contract the vendor will be given a reasonable time in which to perfect his title. Thus, in Logan v. Bull, 78 Ky., 607, the court said:

"The equitable rule as now settled by nearly all the authorities on the subject is, that when the contract is

required to be performed, if the party is able to convey, and tenders his deed, the contract will be enforced, although his title was defective at the date of the contract; and if not able to convey at the time of filing a bill for rescission, if time is not of the essence of the contract, the chancellor will permit the vendor, if he can do so within a reasonable time, to supply the defects in his title, so as to comply with his contract." To the same effect is Gaither v. O'Doherty, 11 Ky. Law Rep., 594; Smith v. Cansler, 83 Ky., 367.

It is also the recognized rule that if there are liens upon the land that the vendor is seeking to compel the vendee to accept, and they are less than the amount of the purchase price that the vendee has agreed to pay, the existence of the lien will not furnish a reason for not enforcing the contract, as the lien can be discharged out of the money due by the vendee. Peak v. Gore, 94 Ky., 533. In Guild v. Atchison, Topeka & Santa Fe R. Co., 57 Kansas, 70, 57 Am. St. Rep., 312, in considering a question like this, the court said:

"It is well settled that the purchaser will not be compelled to receive and pay for a defective title. Nor can a purchaser be compelled to accept a title subject to encumbrances, for the payment of which out of the purchase money provision can not be or is not in fact made. Nor can the purchaser be compelled to receive a deed conveying an encumbered title, and to be forced to rely on the vendor's covenants for his security against existing encumbrances, unless he has expressly agreed to do so. But where an encumbrance can be removed merely by the application of the purchase money, and the court is able to provide for the conveyance of a clear title to the vendee, the mere fact that encumbrances exist which the plaintiff has not removed, or even is unable to remove without the application of the purchase money for that purpose, will not prevent a decree for a specific performance."

But, as this was in fact an exchange of lands, and there was no purchase money to be paid, it was of course necessary before Kimsey could be required to accept the title tendered by Posey and Reichert that the encumbrance upon their land should be removed. He was not obliged to accept the title thus encumbered, no matter what security they offered him as protection against the lien. He was entitled to have an unencumbered title. That is what the contract contemplated, and Posey and

Reichert in a letter dated September 21st, before their suit was filed, addressed to and received by Kimsey, said to him—

"As Mr. Cheatham told you at the time the above contract was signed by you, there is a lien for the purchase money upon our 500 acres of land, which we are ready to pay off and have released whenever you are ready to accept the deed. Mr. Cheatham also stated to us that you had informed him there was a lien or encumbrance on your land, which you would have released, and we presume you will be prepared to do this when we come to make the deeds. In making the deed to. us, we have no objection should you so desire, to your inserting a clause retaining a lien on the land you convey to us to the extent of any liens or encumbrance upon the land that we convey to you, and to indemnify you against any loss by reason thereof. But, as stated above this encumbrance and any other lien or encumbrance, if any, against the land will be lifted and released when the deal is finally closed."

Again, on February 24, 1911, while the action was pending and before judgment was rendered, Posey and Reichert tendered to Kimsey the deed before referred to, and—

"In open court offer to permit the defendant to retain out of said $50,000 purchase money a sufficient amount to cover the encumbrance on the land of the plaintiffs in the event he elects to pay the $100 per acre therefor, or, if he elects to convey to the plaintiffs the 250 acres of land and the interest in the personal property mentioned, they here and now in open court offer to permit the defendant to retain a lien in his deed to them to cover said encumbrance and to indemnify him against the payment thereof. Upon the payment of said sum of $50,000 into court; or, upon the tender in court of a good and valid deed to said 250 acres of land, plaintiffs hereby offer to procure and deliver to the defendant within a reasonable time a full release of said encumbrance on these plaintiffs' land, said money not to be paid or deed not to be delivered to them until said release be obtained."

It will thus be seen that Posey and Reichert offered and agreed to remove the encumbrance if Kimsey expressed a willingness to perform the contract; and, it seems to us this was all they were required to do under the circumstances. Kimsey was resisting their right to

have performance of the contract, and it was not necessary that they should have this encumbrance actually removed until he had expressed a willingness to accept the title freed from the encumbrance or until the court had ordered him to do so. By this offer in open court, both Kimsey and the court were advised that Posey and Reichert were ready and able to tender a good title, if Kimsey was willing to accept it or the court ordered him to do so. In view of this condition, Kimsey is not in a position to attempt to defeat specific performance upon the ground that the land of Posey and Reichert was encumbered. The obligations of the parties were mutual and interdependent. The contract contemplated a simultaneous performance of it by both parties. So long as Kimsey would not accept and the court would not compel him to accept a good title, there was no reason why Posey and Reichert should be required to do more than they offered to do. The only substantial objection urged by Kimsey to defeat the contract was the existence of this encumbrance, and Posey and Reichert proposed to remove this obstacle both before and after the suit was brought, and in so doing satisfied all the requirements of the contract. Time was not of the essence of this contract. Both parties had a reasonable time to perform it in, and we think the offer to remove the encumbrance was timely made.

It is further insisted that the right to specific performance is not an absolute right, but one resting within the sound discretion of the court, and this being so the judgment of the chancellor should not be disturbed. Hennessey v. Woolworth, 128 U. S., 438, 32 L. Ed., 500; Ratterman v. Campbell, 26 Ky. Law Rep., 173. But, the discretion recognized to exist in the cases and authorities generally is not an arbitrary or capricious one, but a sound judicial discretion controlled by established equitable principles. There is no more reason why a valid executory contract should not be enforced than there is why any other valid contract should not be enforced, and when the courts have refused to specifically enforce contracts, it had been because the contract was inequitable or for some other substantial reason such a contract as should not be executed.

As said in Edelen v. Samuels, 126 Ky., 303:

"While the remedy of specific performance is generally spoken of as resting in the discretion or grace of the chancellor, this is more a form of expression than of

accurate definition of the rights of the injured party as to his remedy by specific performance.   In other words, while the chancellor has a discretion it is not an arbitrary but a legal discretion.''

Our conclusion is that the appellee, Kimsey; offered no good reason why the contract should not be specifically enforced, and the lower court should have required performance of it.

Wherefore, the judgment of the lower court is reversed, with directions to proceed in conformity with this opinion.