## Bell Grocery Company v. Letts-Fletcher Company.

### (Decided November 10, 1925.)

### Appeal from Bell Circuit Court.

1. Principal and Agent—Undisclosed Principal May Sue in His Name Upon Contract Made by His Agent—Person Contracted with May Elect to Look to Principal.—Ordinarily, where an agent makes a contract for an undisclosed principal, the latter may sue in his own name upon the contract, and the person with whom the contract is made may at his election look to the principal and not to the agent.

2. Sales—Presumed Parties Make Contracts Subject to Delays in Transit.—Parties making contracts involving transportation of articles sold and bought are presumed to make them subject to the delays in transit which may reasonably be anticipated.

3. Sales—Whether Delivery of Sugar Was Unreasonably Delayed Held for Jury.—Where telegrams comprising part of contract of sale of sugar gave notice that shipment was then on its way to a point in Tennessee, and would have to be sent from there to residence of buyers in Kentucky, and it appeared that the car did not reach destination until 20 days after date of telegram, whether the delivery of the sugar was unreasonably delayed held question for jury.

N. R. PATTERSON for appellant.

LOW & BRYANT for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

The Letts-Fletcher Company is a wholesale grocer at Marshaltown, Iowa. The Bell Grocery Company is a grocer at Pineville, Kentucky. J. F. Sake & Co. are grocery brokers at Evansville, Indiana. In July, 1920, Sake & Co. sent out circulars offering to sell standard cane granulated sugar at twenty-two cents, delivered. The Bell Grocery Company wrote them that they would take two hundred bags of 100 pounds each at this price, and perhaps more. On July 23, Sake & Co. telegraphed it this answer to its letter:

"Answering subject confirmation three or four hundred bags cane granulated transit Tennessee point twenty-two delivered Pineville no Javas,"

and they replied by wire on the same days as follows:

"Ship three hundred cane granulated twenty-two delivered."

On the same day Sake & Company wired Letts-Fletcher Company what they had done and receiving a confirmation from them on the next day, sent the Bell Grocery Company this by wire:

"Confirm three hundred bags granulated twenty-two net delivered Pineville draft payable presentation."

On the same day confirming their wire they wrote the Bell Grocery Company as follows:

"Gentlemen: We are inclosing herewith sales ticket covering your purchase of 300/100 No. bags sugar from the Letts-Fletcher Co. Marshalltown, Iowa.

"This car is being shipped to the Ragland-Potter Co., Murfreesboro, Tenn., and they will unload their portion of the car and forward the balance on to you. You can then make draft against the Letts-Fletcher Co. with receipted expense bill attached, covering the freight.

"We hope this sugar will be satisfactory and that you will be pleased with our service."

There is some dispute in the evidence as to whether the letter was received, but the telegrams are admitted. The sugar had been bought at San Francisco and after it was on the way to Marshalltown had been reconsigned to Murfreesboro, Tennessee. The car reached Murfreesboro August 1st. The purchasers there of 500 bags of sugar removed this by August 5th. On August 6th the car left Murfreesboro, Tennessee, for Pineville, Kentucky, and reached Pineville on August 13th, but before this, on August 9th, the Bell Grocery Company had written to Sake & Company revoking the order for the sugar on the ground that it had been unduly delayed in reaching them. They declined to receive the sugar when it came. The Letts-Fletcher Company thereupon sold it as best they could and brought this action against the Bell Grocery Company to recover for the loss, sugar having declined in price in the meantime. On the trial of the case there were a verdict and judgment for the plaintiff. The defendants appeal.

It is insisted that the contract of the Bell Grocery Company was with Sake & Company and that the Letts-Fletcher Company can maintain no action upon it. But

the rule ordinarily is that where an agent makes a contract for an undisclosed principal, the principal may sue in his own name upon the contract and the person with whom the contract is made may at its election look to the principal and not to the agent.

"When an agent makes a contract for his principal, but conceals the fact that he is an agent, contracting as if he were principal, the principal may at any time appear in his true character, and claim all the benefits of the contract from the other contracting party, so far as he can do so without injury to that other by the substitution of himself for his agent.

"As a general rule, the principal, though undisclosed, is invested by the authorized act of the agent, for the benefit and advantage of the principal, with every right and burdened with every liability arising out of or pertaining to the contract as perfectly as if the principal had, in his own name and person, made the contract." 21 R. C. L. 897-899. See also Tutt v. Brown, 5 Litt 1, Chambers v. Murphy, 192 Ky. 839; Bell v. Borders, 205 Ky. 181.

There are some exceptions to the rule, as where a personal trust in the agent is the consideration. But that is not this case.

It is also insisted that the sugar was not delivered within a reasonable time and that this was a question of law for the court. The circuit court submitted this question to the jury under an instruction which is not complained of. The verdict of the jury can not be disturbed as palpably against the evidence, and so the only question here is whether the court should have peremptorily instructed the jury to find for the defendant. The Bell Grocery Company was notified by the telegrams that Sake & Company were acting as brokers, for the telegram of July 23rd begins with these words: "Answering subject confirmation," and the telegram of July 24th was sent confirming the sale, which gave notice that the sale had been confirmed. The telegram of July 23rd also contained these words: "Transit Tennessee point." This gave notice that the car was then on the way to a point in Tennessee and would have to be sent from there to Pineville. In view of the fact that the car did not reach Murfreesboro, Tennessee, until August 1st, and

did not leave there until August 6th it can not be said as a matter of law that there was here an unreasonable delay in getting the sugar to Pineville. This court has steadily held that when there is room for difference of opinion among reasonable men as to what is ordinary care, the question is for the jury, but where there is no room for difference of opinion between reasonable men the question is for the court. The same rule must apply as to what is a reasonable time. The case is for the jury in all cases where there is room for a difference of opinion between reasonable men as to whether the thing was done within a reasonable time. It is a well known fact that at the end of divisions freight trains are broken up and the cars are sent on when a new train is made up, and in this way freight does not move as fast as it otherwise would. Necessarily there was some delay at Murfreesboro in unloading 500 bags of sugar and there would be some delay there after the sugar was unloaded before the car would start on its journey again, and when it started it would be subject to delays at junction points between Murfreesboro and Pineville. Business men know that freight is often delayed in this way, and in making contracts like this they must be presumed to make them subject to the delays in transit which may reasonably be anticipated. There is room for a difference of opinion here between reasonable men as to whether there was an unreasonable delay and the question was properly submitted to the jury.

"The rule upon this point seems to be that where there is no room for honest difference among intelligent men as to whether the conduct of the defendant was that of an ordinarily prudent man, in view of all the facts and circumstances surrounding him, the question may be decided by the court as one of law.

"But where, although the facts are undisputed, the court is unable to say that there is no room for honest difference of opinion as to the conduct of an ordinarily prudent man under the circumstances, but that question is to be decided upon inferences to be drawn from the facts already established, those inferences must be drawn by the jury unless they are certain and incontrovertible." Dolfinger & Co. v. Fishback, 12 Bush 480.

This rule has been steadily maintained by the court in negligence cases, Cincinnati, &c., R. Co. v. Black, 157 Ky. 149, Bosler Hotel Co. v. Speed, 167 Ky. 800, and the same rule must necessarily apply to other like questions, such as what is a reasonable time in a freight shipment. Hoggins v. Becraft, 1 Dana 30; Moxley v. Moxley, 2 Met. 311; Asher v. Asher, 148 Ky. 268.

Judgment affirmed.