# Klatch v. Simpson.

(Decided January 23, 1931.)

HOWARD M. BENTON for appellant.

HODGE & HELM for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The expressly admitted and properly alleged and undenied facts in this case are:

That on January 22, 1929, the appellee and defendant below, Ella M. Simpson, subscribed and delivered to the appellant and plaintiff below, Louis Klatch, a writing which was in these words:

> "For one dollar ($1.00) and other valuable considerations, I hereby grant option to Louis Klatch, for four months (120) days, commencing this date, January 22, 1929, and expiring May 22, 1929, one house located at No. 125 Highland Avenue, Fort Thomas, Kentucky, said lot being sixty-eight (68) feet front by six hundred thirty-one (631) feet depth, for the price of ninety Three Hundred and Fifteen and 00/100 Dollars; Net $9,315.00.
>
> "Said Louis Klatch guarantees to advertise said property no less than three times a week during life of this option, and to put forth his best efforts to sell same."

That some time before the expiration, on May 22, 1929, of the 120 days' life of the option so given by defendant to plaintiff, it was verbally accepted by the latter, and at the same time, or before the expiration of the time limit, the terms of payment were also orally modified and agreed to by both parties, so that, instead of the purchase price to be paid in cash at the time of the performance of the contract, as the option indicates, only $2,315 cash was to be paid at that time, and the purchaser or future vendee was to be a Mr. Velky, plaintiff's transferee of the option. The balance of the expressed consideration was to be paid by defendant

accepting a second mortgage on the optioned property (the first one for $7,000 to be in favor of a local building and loan association, from which Velky was borrowing that amount to finance the deal) for $2,000, and the balance of $5,000 of the loan to Velky was to be credited to defendant and to remain for an agreed time with the building and loan association as a time deposit drawing interest. We repeat that the facts as stated up to this point were expressly admitted or were undenied as alleged in plaintiff's pleading.

The contested facts, but which we are convinced the testimony overwhelmingly establishes, are: That defendant's adult and married son, with whom she resided, was her agent in the negotiations had with plaintiff with reference to the sale and purchase of the involved property, and that she herself, or by her agent, before the expiration of the time limit in the option, and after it had been orally accepted by plaintiff, agreed to an extension of the time for the performance of the contract and the carrying of it into complete execution, beyond May 22, 1929, and until after the meeting of the board of directors of the building and loan association at which the arrangements whereby the loan to Velky to enable him to finance the purchase were to be completed, and, since that meeting was on the night of May 23, one day after the expiration of the option, the mechanical performance whereby the manual passing of executed papers could be had was necessarily postponed until after May 23. A meeting was had at the office of the attorney for the building and loan association, and who also represented plaintiff, on May 24, at which time all of the necessary papers to a complete performance of the contract were executed and the deed to be executed by defendant was then prepared; but, in the meantime, and after the modification had been agreed upon, defendant expressed an unwillingness to accept the note of Velky for the $2,000 deferred payment and expressed a desire that the conveyance be made direct to plaintiff and that he execute his note for the $2,000 to her, secured by a second mortgage, instead of Velky doing so, and to which plaintiff agreed, and which necessitated the postponement of the time for the complete execution of the contract for

one day, or until May 25, 1929, and to which defendant by her son as her agent, also agreed.

We repeat that the testimony in its substance and the manner of its giving thoroughly convinces us that the disputed facts are as we have stated, and which, as we have seen, were: Whether or not plaintiff's son was her agent in the transaction, and whether the extension of time for the full performance of the contract was made by defendant or her agent? Our answer as above indicated is that both questions should be answered in the affirmative.

On the morning of May 25, as so agreed upon, as we have found, plaintiff and his wife met at the appointed place, which was the law office of Howard M. Benton, the attorney for the building and loan association, ready to execute the already prepared deed to Velky and wife upon the execution to him of the deed by defendant, which was also then prepared; but neither defendant nor her agent appeared on that occasion, and it was later discovered by plaintiff that about that same hour defendant was executing another option on, or making a sale of, the same property for an increased price to another real estate agent by the name of Grimm, and for and on behalf of a Mr. Greer, and later in that day she positively refused to carry out any of the terms of the agreement with plaintiff. Two days thereafter (May 27) plaintiff filed this equity petition against defendant in the Campbell circuit court seeking a specific performance of the contract.

The defenses were that there had been no extension of time for performance agreed upon, but, if there had been, it was without consideration; that the original option contract, which was in writing, had not been signed or accepted in writing by plaintiff, and which it was claimed was necessary in order to make it binding on defendant; that there was no consideration for the option; and that, it having expired on May 22, before it was performed or offered to be performed by plaintiff, it became of no effect and defendant was thereby relieved of all obligations thereunder. After proof taken and submission of the cause, the court, without an opinion, dismissed the petition, and to reverse that judgment plaintiff prosecutes this appeal.

Whether the court adjudged all of the interposed defenses sufficient to defeat the action, or only one or more of them sufficient for that purpose; or whether the court found for defendant on the two above-disputed facts as a basis for the judgment rendered, we are unaware in the absence of an opinion showing the grounds for the court's action. But, as we have hereinbefore stated, if the court made such findings of fact upon the only two disputed issues, we are clearly convinced that he was in error, and we will dispose of the legal questions involved upon the theory that such contested facts should be determined in favor of plaintiff. With the facts as so determined, by us, plus those that are admitted or undenied, the only remaining question is: What is the law applicable thereto?

It is argued by counsel for defendant, as we have hereinbefore outlined, that (1) the original option was never binding so as to give plaintiff the right to enforce it because he did not subscribe his name to it, and that, since it involves a sale of real estate, our statute of frauds (section 470 of our present Statutes) requires that he should have done so; (2) that, if mistaken in that, then there was no consideration for the option; (3) that, if mistaken in both of those two grounds, then there was no consideration for the modification of the contract, which also, as contended by counsel, should have been in writing subscribed by both parties; and (4) that, if mistaken in the first three contentions, then the expiration of the time limit in the option (May 22) without the complete performance of the contract rendered the oral agreement to extend the time for such performance without consideration, and, being oral, was also in violation of the statute of frauds. These arguments will be discussed and determined in the order named.

A complete answer to the first argument is that this court has consistently in a long line of cases construed the provisions of our statute of frauds requiring specified contracts to "be in writing, and signed by the party to be charged therewith, or by his authorized agent," as requiring the signature of only the party to be charged, and that in the sale of real estate the signature of the vendor is sufficient to bind him if the writing is delivered to and accepted by the vendee, and that such acceptance

by the latter need not be in writing, and, of course, no part of his acceptance is required to be signed or subscribed by him. Some of the numerous cases so holding are Tyler v. Onzts, 93 Ky. 331, 20 S. W. 256, 14 Ky. Law Rep. 321; Henderson v. Perkins, 94 Ky. 207, 21 S. W. 1035, 14 Ky. Law Rep. 782; Fugate v. Hansford, 3 Litt. 262; Moore v. Chenault, 29 S. W. 140, 16 Ky. Law Rep. 531; Campbell v. Preece, 133 Ky. 572, 118 S. W. 373; McKnight v. Broadway Investment Co., 147 Ky. 535, 145 S. W. 377; Armstrong v. Lyen, 148 Ky. 59, 145 S. W. 1120; City of Murray v. Crawford, 138 Ky. 25, 127 S. W. 494, 28 L. R. A. (N. S.) 680; Posey v. Kimsey, 146 Ky. 205, 142 S. W. 703; Jones v. Tye, 93 Ky. 390, 20 S. W. 388, 14 Ky. Law Rep. 448; Winn v. Henry, 84 Ky. 48, 7 Ky. Law Rep. 693; Miller v. Antle, 2 Bush, 408, 92 Am. Dec. 495; Evans v. Stratton, 142 Ky. 615, 134 S. W. 1154, 34 L. R. A. (N. S.) 393; Duteil v. Mullens, 192 Ky. 616, 234 S. W. 192, 193, 20 A. L. R. 361. In the latter case, in expressing such conclusions, we said: "A writing evidencing a sale of land makes an obligatory contract . . . when signed by the vendor alone, and is accepted by the vendee." It is therefore clear that this argument is without merit.

In disposing of argument 2, and for the purposes of this case only, it might be conceded that, if there had never been an acceptance of the option before its withdrawal, but which was never done or attempted to be done until after the time set for the performance of the contract, the argument would be sound. The law, however, is well settled in this and in other jurisdictions to the effect that the offer, though without consideration, if accepted within the time limit and before withdrawal by the contemplated vendor, becomes obligatory upon all parties to the option after such acceptance, and it is thereafter supported by the consideration of mutual promises; i. e., the promise of the vendor to convey according to the terms of the option, and the promise of the vendee, issuing out of his acceptance, to accept the conveyance and otherwise comply with the terms of the option. 27 R. C. L. 624, sec. 20, page 333, sec. 29, page 338, sec. 35; Murphy v. Reed, 125 Ky. 585, 101 S. W. 964, 31 Ky. Law Rep. 176, 10 L. R. A. (N. S.) 195, 128 Am. St. Rep. 259; Walton v. Franks, 191 Ky. 32, 228 S. W. 1025; and others cited and discussed in those opinions. As we have hereinbefore seen, plaintiff accepted

the written option given to him by defendant before the time for its expiration and before any withdrawal thereof by her, and thereafter it became a binding contract on both of the parties to this litigation. It is therefore clear that this argument is also without merit.

It will be remembered that argument 3 is bottomed upon the contention that the modification of the contract, which affected only the terms and the time for the payment of the consideration, though agreed to before the expiration of the time limit in the option, is invalid and unenforceable because it was such an essential alteration of the original written contract as to necessitate its being in writing and signed by the party to be charged under the statute, and also because it was without consideration. It is our conclusion, however, that such contentions are unsound. The modification, which, as we have seen, related only to the time and manner of payment of the consideration, did not in any wise alter the contract in its essence, or create an agreement on the part of defendant to sell any other or more land than was described in her written option, nor did it compel plaintiff to purchase any other or more land than was therein described. Neither did it curtail or increase the amount of the expressed consideration contained in the option, and which, it will be remembered, had been accepted at the time the modification was agreed to. A similar question embodying the same principle was before us in the case of Murray v. Boyd, 165 Ky. 625, 177 S. W. 468, 472, and the opinion therein held that a parol modification, agreed to by the parties after the contract had become binding on both, of the nature and kind here involved was not the creation of a new contract required to be executed in conformity with the statute of frauds, since the alteration did not go "to the very essence of the contract" or obligate the vendor to sell any more or different land than was originally agreed upon, and that the legal force of the contract was in no wise affected by a modification of the character here involved.

It was said in that opinion: "But if the subsequent agreement merely postponed the time of payment or waived or rescinded the agreement for survey, there is no reason why that charactr of agreement would not be binding, since the statute of frauds does not require agreements in relation to such subjects to be in writing.

If the parol modification would otherwise be enforceable, its validity is not affected, although it is incident to a written contract which concerns a subject that the law requires shall be in writing. Apparently a contrary rule was thus stated in McConathy v. Lanham, 116 Ky. 735, 76 S. W. 535, 25 Ky. Law Rep. 971.''

The McConathy case, cited in the excerpt, was then distinguished. It had under consideration facts showing that the option was never accepted by the optionee, and wherein it was expressly provided that, if not so done, accompanied with the payment of the consideration within the time limit, then ''this contract of sale shall be null and void.'' The alteration therein involved was not only attempted to be made before there was any acceptance of the option, but it was one that went to the very essence of the contract as stipulated by the parties in the writing signed by the vendor. The alteration in the instant case, as we have seen, does not go to the essence of the contract, nor does it in any wise create a different one from that into which the parties had entered, but only modifies the terms of payment, and it is quite clear that the doctrine of the Murray opinion is applicable to the facts of the instant case and that the relied on McConathy opinion has no application. Therefore this argument is also without avail.

In disposing of argument 4, these facts should be borne in mind: That the involved extension of time, which as we have found was mutually agreed to by the parties, was not for the purpose of enabling plaintiff to accept the written option after it had expired, for he had already done that in a manner to make it obligatory on him. On the contrary, the extension so agreed upon was the time within which the already accepted and duly modified contract should be performed or carried into complete execution by each party completing his or her mechanical part by executing the necessary papers and manually delivering them to the other one. The extension, therefore, like the modification discussed in argument 3, did not go to the essence of the contract, nor did it in any manner affect its subject-matter, but only postponed for a brief period the time for the consummation or performance of the already duly executed contract in order to accommodate the convenience of the purchaser in financing the trade, and which slight postponement was due to the fact that the loan by the building and loan

association could not be granted, and the borrowing transaction completed, until the directors of the association met on May 23; and all of which prerequisites were agreed upon on that occasion and of all of which defendant had notice and agreed to before the expiration of the time limit contained in the option.

The text in 27 C. J. 328, sec. 14, says: "A distinction has been drawn between the contract, which the statute requires to be in writing and its performance, to which the statute does not apply, and upon this distinction it is held in a number of jurisdictions, that an oral modification of a written contract merely in respect of the mode or time of performance is valid and binding. The subsequent parol agreement must affect the mode or time of performance only, and not be in terms such a radical departure from the original agreement as to constitute an entirely new contract. The line is drawn between a substituted performance of the original contract and a substituted contract. . . . Where the parties to a written contract acquiesce in its oral modification and its non-performance according to the original terms by one in reliance upon the other's assent, the latter is estopped to deny the efficacy of the modifying agreement, as where the parties agree to an extension of the time of performance and act upon such agreement."

A number of cases from many of the states of the Union are cited in notes 57 to and including 62 to the text, two of which are Stark v. Wilson, 3 Bibb 476, and the Murray case supra, and the latter, as we have seen, is in accord with the text. In the same publication, volume 13, p. 689, it is said, "The time for performance of a written contract may be waived by parol," and in support of that text the case of Opsjon v. Engebo, 73 Wash 324, 131 P. 1146, 1148, is cited, and in that opinion it is held that "the time in which to perform a written contract may be waived as well as extended by parol." The identical question was also determined in like manner in the prior case in the same court of Whiting v. Doughton, 31 Wash. 327, 71 P. 1026. The same question of a parol extension of time for performance was referred to by this court in a manner indicating its approval in the case of Fields & Combs v. Vizard Investment Co., 168 Ky. 744, 182 S. W. 934, Ann. Cas. 1918D, 336, but, because it was not necessary under the facts of that case to expressly pass upon it, it was left open with a citation

of the text in 20 Cyc. 287, and appending cases approving such parol extension.

We therefore conclude that the complained of extension of time did not involve such a modification of the contract as to require a new one executed with the formalities of the statute, and that the promise of each party to postpone the performance until the day agreed upon was a sufficient consideration therefor. This argument is therefore without merit.

Some reference is made in brief to the fact that the consideration was not tendered by plaintiff to defendant as finally agreed on before the filing of this action. The petition alleged a willingness and ability on the part of plaintiff to carry out the contract, and he expressly offered therein to do so, but did not formally tender the consideration even if it, according to the altered terms, was of such a nature that he could have done so, and because of such failure it is insisted he cannot maintain the action. This argument, however, overlooks the fact that no such tender is necessary as a prerequisite to maintain the action when defendant refuses absolutely to perform, and has effected a sale of the property to another, or deals with it in such a manner as to repudiate his contract.

We therefore conclude that the court erred in dismissing the petition, and the judgment is reversed, with directions to set it aside and to enter one consistent with the principles of this opinion, and with the prayer of the petition.