William L. OLIVER, Appellant,

v.

Maggie WYATT, Appellee.

Court of Appeals of Kentucky.

May 26, 1967.

Rehearing Denied Oct. 6, 1967.

Boyd F. Taylor, Hamm, Taylor & Milby, London, for appellant.

Edward Jackson, Beattyville, Paul E. Hieronymus, McKee, for appellee.

STEINFELD, Judge.

This is an action to quiet title to land and for specific performance. It involves a controversy over the validity of a writing entitled "OPTION".

Maggie Wyatt, whom we will refer to as Wyatt, was the owner of a 51.09 acre tract of land in Laurel County. William L. Oliver, whom we will refer to as Oliver, is a dealer in real estate. After some preliminary negotiations Oliver prepared a writing which he presented to Wyatt. Among other things, it provided that " * * * in consideration of Five Hundred and no/100 Dollars ($500.00) (hereinafter referred to as the 'Downpayment') * * *" Wyatt granted " * * * to William L. Oliver, as agent for his client, (hereinafter called 'Buyer') the exclusive option to purchase at the price and on the terms and conditions * * *" the 51.09 acres of land. There were many conditions and provisions some of which we will discuss later in this opinion. Wyatt signed this writing on the 17th day of March, 1965. At the end of this "OPTION" below Wyatt's signature was the following:

"EXERCISE OF OPTION

The undersigned, Buyer, hereby exercises the foregoing Option and agrees to purchase the above described Property at the price and on the terms and conditions, above set forth, this day of , 1965."

On August 5, 1965, Oliver filled in that date, signed it "William L. Oliver, Buyer" and sent an executed copy to Wyatt.

She refused to make the conveyance and on the 11th day of February, 1966, she filed a suit in the Laurel Circuit Court in which she alleged that she was the owner of the 51.09 acres of land and that Oliver, by reason of the writing entitled "OPTION"

was asserting a claim upon the land. She demanded that the title be quieted and that Oliver be required to release his claim. After alleging that he was ready, willing and able to pay for the property he counterclaimed and demanded that Wyatt be required to carry out the provisions of the "OPTION" and convey the land to him. Wyatt replied that Oliver had represented to her that he was agent for the "Standard Oil Company" when he was not agent for anyone and that Oliver was guilty of fraud and misrepresentation. Further, she claimed that the writing was void because it failed to name the other party and that Oliver "was agent for no client." She asserted other defenses to the counterclaim.

The parties, through their attorneys, agreed that two of the issues could be tried without the introduction of any evidence. These were: Whether there was a valid option to purchase the real estate and whether the acceptance was valid and resulted in a binding contract of sale. The lower court, after making findings of fact and stating conclusions of law, adjudged that the writing was " * * * void and of no legal effect and (did) not create any binding contract * * * ". It further adjudged that Wyatt's title to the land is quiet and that she was not required to convey the land to Oliver.

A controversy rages as to whether or not the writing was a continuing offer to sell real property or an option. If it was a continuing offer to sell it was accepted before it was withdrawn. This created a contract. Walton's Ex'r v. Franks, et al., 191 Ky. 32, 228 S.W. 1025; Klatch v. Simpson, 237 Ky. 84, 34 S.W.2d 951; Combs, et al. v. Turner, et al., 304 Ky. 179, 200 S.W.2d 288; Palfreeman et al. v. Broderick, et al., 306 Ky. 538, 208 S.W.2d 736; Restatement of the Law, Contracts, section 34.

It is apparent that the acceptance occurred before an unreasonable time had passed. The writing showed that "Buyer" proposed to use the property for retail business purposes and would find it essential to have surveys made, acquire adjacent property, arrange for curb cuts and permits for sanitary facilities. Obviously time was required to complete all such arrangements. We are not prepared to say that less than five months is an unreasonable time within which to accept a proposal under these circumstances, particularly since Wyatt made no effort to withdraw it.

Wyatt contends that the agreement is vague, indefinite and uncertain because it contains no set time for performance. The law is clear that when an offer to sell fails to fix a time for acceptance the offer continues for a reasonable time. 17 Am.Jur.2d 373, Contracts, section 35. For the reasons above stated we find no merit whatsoever in this contention.

At the time Wyatt signed the contract in controversy Oliver paid to her $500.00 to be credited on the purchase price if the purchase was completed, and to be retained by her under all other circumstances except that if, after the exercise of the " * * * Option, the resulting contract of purchase is terminated for any reason other than default on the part of Buyer, said Downpayment shall be forthwith returned to Buyer." Such provisions are frequently found in options granted for the purchase of real estate. It is our opinion that Wyatt intended to grant an option to purchase her land. Cawthon v. McAlister, 217 Ky. 551, 290 S.W. 316. For the reasons stated herein it makes no difference whether the writing was an offer to sell or an option.

When Oliver delivered to Wyatt the writing entitled "EXERCISE OF OPTION" a contract was entered into, unless there is merit in the other contentions made in these proceedings.

The issue which we will discuss next is " * * * that the Buyer or grantee being designated only as 'William L. Oliver, as agent for his client', does not name a legal grantee * * * " and the collateral issue

of whether the acceptance by "William L. Oliver, Buyer" was an acceptance.

 In R. C. Curtis and W. P. Wilcox v. Spadie, Ky., 399 S.W.2d 731 we held that the fact that a real estate transaction form indicated that an agent was executing it was " * * * of no consequence when viewed in conjunction with the instrument as a whole." We said that where the alleged agent was in reality the Buyer he could not recover a commission. The "OPTION" involved in the present controversy contained the following language: "Upon transfer of title Seller will pay real estate commission to NO ONE, IN NO AMOUNT and in no event shall Buyer be liable therefor." It is our opinion that the principle announced in R. C. Curtis and W. P. Wilcox v. Spadie, supra, applies here. An examination of the writing indicates that it was of no importance to Wyatt to learn whom Oliver was representing. She did not require that the name of the "Buyer" be included in the writing. We hold that the failure to name the "Buyer" was immaterial, and find no justification in Wyatt's complaint that Oliver had no right to accept the proposal as the principal. The trial court was in error in holding that the "OPTION" was void because it did not name a legal grantee. Bell Grocery Co. v. Letts-Fletcher Co., 211 Ky. 147, 277 S.W. 295.

In Bulova Watch Company v. Roberts Jewelers of Rock Hill, Inc., 240 S.C. 280, 125 S.E.2d 643, it was held that "One who undertakes to order and receive goods for a non-existent principal represents no one, and binds himself to pay the purchase price. 2 Am.Jur., Agency, section 316; Medlin v. Ebenezer Methodist Church, 132 S.C. 498, 129 S.E. 830, Lagrone v. Timmerman, 46 S.C. 372, 24 S.E. 290."

 If the agent is merely purporting to be acting for a principal but is in fact acting for himself, he will be personally liable on the contract. Hagan v. Asa G. Candler, Inc., 59 Ga.App. 587, 1 S.E.2d 693, aff'd 189 Ga. 250, 5 S.E.2d 539, 126 A.L.R. 108. After acceptance by Oliver, he was disclosed as the principal; therefore, he was liable to Wyatt—he was the Buyer and she became obligated to him as if he was originally named in the "OPTION". Bell Grocery Co. v. Letts-Fletcher Co., supra.

 Wyatt contends that if by the acceptance, a contract between Wyatt and Oliver existed, it was void for lack of mutuality. Wyatt argues it provided that the "Buyer" did not have to perform if he could not obtain clear title to other land which he might option in the future and if any one of several other contingencies arose which in the judgment of the "Buyer" might tend to affect the use of the property he did not have to take it. The "OPTION" provided that "It is understood that Buyer proposes to improve and use the Property for retail business purpose and Seller agrees that any restrictions of record, zoning ordinances, governmental regulations, or inability to secure permits for sanitary facilitaries or curb cuts, which in the judgment of Buyer prohibit, limit, or restrict use of the Property for such retail business purposes shall for the purpose of this contract be construed to render Seller's title not good and marketable." The court below concluded that there was no mutuality of obligation and that a binding contract did not exist for this reason. Each of the elements announced pertains to records in governmental offices or the exercise of the functions of government. These were matters over which "Buyer" had no control, and the judgment which he was authorized to make was not discretionary, but on the contrary, a determination of whether such matters so restricted the use of the property that a retail business could not be operated thereon. We hold that such a determination does not eliminate mutuality. Montanus v. Buschmeyer, 158 Ky. 53, 164 S.W. 802; Southeastern Land Company v. Clem, 239 Ky. 417, 39 S.W.2d 674; David Roth's Sons, Inc. v. Wright and Taylor, Inc., Ky., 343 S.W.2d 389.

Marketability of title is a legal matter the test of which depends upon the certainty or uncertainty of the title. Jackson v. Lamb's Ex'r, 299 Ky. 505, 186 S.W. 2d 9. The right to decline to take if the title was not marketable did not affect mutuality of the contract.

The judgment is reversed for proceedings consistent with the foregoing opinion.

All concur.