## 6967. PEEPLES v. PERRY.

Where an agent executes, without authority from his principal, a bond in the name of his principal as surety, and fails to disclose his lack of authority to the other parties to the instrument, and they have no knowledge of such lack of authority, and no ratification by the principal appears, and the principal is without knowledge of the agent's failure to comply with the specific requirements of a written power of attorney, which furnishes his sole authority to bind the principal, and, on account of the implied representation as to his authority to bind the principal in the manner attempted, a beneficiary in the instrument suffers injury, the injured person may recover damages from the agent individually.

DECIDED JULY 6, 1916.

Complaint; from city court of Valdosta—E. K. Wilcox, judge pro hac vice. September 11, 1915.

*Whitaker & Dukes,* for plaintiff in error.

*W. H. Krauss, Branch & Snow,* contra.

24

WADE, C. J. In the first count of the petition as amended it was alleged that the defendant injured and damaged the plaintiff in the sum of $515.41, with interest, by reason of the facts recited. It was alleged, that on April 5, 1909, The Title Guaranty and Surety Company, a corporation engaged in the business of selling surety bonds and acting as surety on bonds, appointed W. D. Peeples (the defendant) and S. M. Varnedoe its attorneys with power jointly to sign the name of said company and affix its seal as surety to bonds executed by administrators, guardians, etc., and thereby to bind the said company as fully to all intents and purposes as if the bond so executed had been executed by its duly authorized officers with the seal of the company attached, a power of attorney evidencing such appointment being on said date executed and delivered to the said Peeples and Varnedoe. On February 7, 1910, W. E. Fry, who had been appointed guardian of his daughter Jessie Mae Fry, now Jessie Mae Perry, the plaintiff in this case, applied for and procured from Peeples, acting as agent and attorney for The Title Guaranty and Surety Company, a bond as such guardian, and presented it to the ordinary of Lowndes county, Georgia. The bond recited that W. E. Fry, as principal, and The Title Guaranty and Surety Company, as security, were bound unto A. V. Sims, ordinary, and his successors in office, etc. It was signed:

"W. E. Fry (Seal)

The Title Guaranty & Surety Co. (Seal)

W. D. Peeples.

---

Attorneys in fact."

By amendment the petition alleged that "at the time the said defendant executed said bond, as the agent and attorney of The Title Guaranty & Surety Company, and the delivery of the same, the said W. D. Peeples did not inform the said W. E. Fry or A. V. Sims, the ordinary of Lowndes county, that under the power of attorney given by The Title Guaranty & Surety Company it was necessary, for the purpose of binding said company, to secure the joint signature of the said W. D. Peeples, and S. M. Varnedoe, and the said W. E. Fry, and A. V. Sims did not know that the joint action of the said W. D. Peeples and S. M. Varnedoe was necessary for the signature of the said company upon said bond." The bond was accepted and approved by the said ordinary on Febru-

ary 7, 1910, and letters of guardianship were issued to W. E. Fry, who immediately entered upon the discharge of his duties as such guardian. Between the time of the appointment of Fry as such guardian and the date when she reached her majority, to wit, January 20, 1911, Fry received as her guardian the sum of $715.41, in money belonging to her and to which she was entitled, but failed to pay the same to the plaintiff or to expend it for her benefit, and paid her $150 only, and appropriated the remainder—$565.41—to his own use. On February 25, 1910, The Title Guaranty and Surety Company removed the defendant and S. M. Varnedoe, as agents and attorneys in fact for said company, and revoked and annulled the power of attorney issued to them in 1909 as aforesaid. On August 13, 1912, the plaintiff filed suit in the city court of Valdosta against W. E. Fry, as principal, and The Title Guaranty and Surety Company, as surety, to recover the sum of $565.41 of her money which had been appropriated by Fry to his own use, and the petition and process in said case were served on W. D. Peeples, as agent of The Title Guaranty and Surety Company, on August 16, 1912. Peeples, although he had been removed from the office of attorney for the said Title Guaranty and Surety Company, and his power of attorney had been previously revoked and annulled, failed to notify the plaintiff of such revocation, and failed also to notify The Title Guaranty and Surety Company of the filing of said suit, and in consequence of his failure to notify it of the suit, no defense was interposed by The Title Guaranty and Surety Company; nor was any defense interposed by Fry or by Peeples; and on March 3, 1913, judgment was obtained by the plaintiff against The Title Guaranty and Surety Company for said sum of $565.41, with interest from January 20, 1911. Fry died in December, 1912, "being at the time insolvent and owning no property," and when the plaintiff attempted to collect the said judgment from The Title Guaranty and Surety Company, said company repudiated the act of Peeples in signing its name to the bond by virtue of which the judgment was obtained, and alleged that Peeples had authority to sign its name to said bond jointly with S. M. Varnedoe, and not otherwise, and that said bond was therefore not its act or deed, and that at the time the suit above referred to was served upon Peeples, he was not its agent and had no authority to accept service for it, as his power of attorney had been revoked and annulled.

The plaintiff further alleged that in signing the name of The Title Guaranty and Surety Company to the bond without the joint action of S. M. Varnedoe as required by the power of attorney, Peeples "was acting without authority from The Title Guaranty and Surety Company, and by said act beyond the scope of his authority," and by his failure to inform the said ordinary that under the power of attorney executed by The Title Guaranty and Surety Company to him and to Varnedoe, the joint action of both Peeples and Varnedoe was required to bind The Title Guaranty and Surety Company, Peeples committed a wrong upon the plaintiff, in consequence of which the bond approved by the ordinary did not have a good and sufficient surety who was legally bound for any defalcation of Fry, and as a result the plaintiff had been unable to recover from Fry her money wrongfully appropriated by him to his own use; to her loss and damage in the sum of $565.41, the amount of the devastavit of Fry, as guardian, besides interest from January 20, 1911. It was further alleged that in May, 1913, the defendant paid her $50, to be applied in part satisfaction of the liability incurred by him to the plaintiff, thus leaving a balance due her by him of $515.41, with interest as aforesaid. A second count of the petition contained substantially the same allegations, and alleged liability on the part of the defendant by virtue of his undertaking as surety on the bond, but this count was stricken on demurrer, and therefore need not be considered.

To the first count in the petition there was a demurrer asserting that no cause of action was set out against the defendant, that no facts were set out therein which in law authorized a recovery against him, and that the allegations were multifarious and duplicitious. The case is here on exceptions to the judgment overruling the demurrer.

As has been stated, the first count of the petition alleges that the defendant injured and damaged the plaintiff in the sum sued for, by undertaking to bind The Title Guaranty and Surety Company as surety on the bond of her guardian without any authority to bind it by his own act alone; that at the time the defendant executed and delivered the bond as agent and attorney of The Title Guaranty and Surety Company, he did not inform Fry, the principal on the bond, or the ordinary, that, under a power of attorney executed by The Title Guaranty and Surety Company to himself

and Varnedoe, it was necessary, in order to bind the company, that the joint signature of himself and of Varnedoe should be attached to the bond, and that Fry and the ordinary did not know this.

As to the liability generally of an agent contracting for another without authority, the following concise statements are supported by abundant authority: "As to the ground upon which the liability of an agent contracting for another without authority rests, the authorities in the several States differ widely, nor is it easy to reconcile the various decisions in the same State. In some jurisdictions, particularly in the earlier cases, it is held that an action may be maintained against the agent as principal upon the contract itself, although it contains no apt words to bind him personally, but only to bind the principal, upon the theory that the contract must have been intended to bind some one, if not the principal, then the agent. By the great weight of recent authority, however, this theory has been emphatically repudiated, and it is now generally held, more logically, that the agent can not be held upon the contract unless it contains apt words to bind him personally, in the absence of which the only remedy is by an action for the breach of his implied warranty or an action for deceit if the circumstances warrant the latter remedy." 31 Cyc. 1614, 1615. "The cases in which an agent acting without authority has been held personally liable are generally classified as follows: First, where the agent makes a false representation of his authority, with intent to deceive; second, where with knowledge of his want of authority, but without intending any fraud, he assumes to act as though he were fully authorized; and, third, where he undertakes to act, bona fide, believing he has authority, but in fact having none. It may be said generally, as to cases fairly brought within either of the first two classes, there can be no doubt as to the personal liability of the self-constituted agent; while the liability of the agent in cases belonging to the third class has sometimes been doubted, the weight of authority is that they also are liable." 1 Am. & Eng. Enc. Law, 1124.

Where one has knowledge of his want of authority and, without intending any wrong or by making false representations as to his authority, executes a contract as the agent of another, he is personally liable to the person with whom he is dealing, and the third party, on learning the facts, has the right to repudiate the contract and hold the assumed agent immediately responsible for damages.

Where such an agent bona fide believes he has such authority, but in fact has none, and injury results to a third person who has honestly relied on the correctness of his position as agent in making a contract in behalf of his apparent principal, the agent will be personally liable for such injury. "The principle upon which his liability rests is that he has been guilty of a wrong or omission depriving the party dealing with him of the benefit of the liability of the principal for whom he assumed to contract." 1 Am. & Eng. Enc. Law, 1125, 1126. "To give a party a right of action against a professed agent, he must have been ignorant of the want of authority on the part of the latter and have acted upon the faith of the representations, express or implied, that the professed agent had the authority assumed. Hence, if the party complaining is fully cognizant of all the facts touching the agent's authority, the latter will not be liable. Where all the facts are known to both parties and the mistake is one of law as to the liability of the principal, the fact that the principal can not be bound is no ground for charging the agent. As a person entering into a contract as agent for another warrants his authority, unless special circumstances or express agreement relieve him from that responsibility, it may be stated generally that the remedy against one who assumes to act as the agent of another, and in that capacity undertakes to make a contract binding upon his principal, is in the nature of an action for deceit, or upon the breach of the implied warranty of his authority, according to the facts of the case. There is a class of cases, based upon the principle that it is the contract of some one, and if not the principal it must of necessity be that of the agent, in which it has been held that the agent may be liable upon the contract itself, and compelled personally to answer or perform it as if it were his own. But by the weight of authority the agent is not liable upon the contract unless it contains apt words to bind him personally, for the reason that it is not the contract of the principal, as the assumed agent has no authority to bind him, and it is not the contract of the agent, for in making it he did not attempt to bind himself." 1 Am. & Eng. Enc. Law, 1127, 1128, 1129. "By the weight of authority an agent is not liable upon a contract which he enters into without or in excess of his authority unless it contains apt words to bind him personally. The reason assigned for this view is that it is not the contract of the principal, as the as-

sumed agent has no power to bind him, and it is not the contract of the agent, for in making it he did not attempt to bind himself, and where no contract has been entered into the law will not undertake to create one." 2 Corpus Juris, 806. The same authority (p. 807) declares that the remedy against one assuming to act as agent of another and undertaking in that capacity to make a contract binding upon his principal is an action in the nature of an action for deceit, or upon the breach of the implied warranty of his authority, according to the facts of the case; although no implied warranty of authority is recognized in some States, and the only action which may be brought is an action ex delicto for deceit, where the facts warrant it. Of course, if the contract contains apt words to bind the agent personally, he may be held liable directly on the contract.

It is scarcely necessary to say that the defendant could not by his individual act bind his principal, where the power of attorney under which he assumed to act was conferred upon himself and Varnedoe jointly, and expressly stipulated that the joint action of both attorneys in fact was necessary. "When authority to perform an act of a private nature is conferred on two or more agents, the principal is bound only when the execution is by all." 1 Am. & Eng. Enc. Law, 1057, and numerous cases there cited. "Generally it is presumed that when a principal employs more than one agent to represent him in the same matter of business they are joint agents, the exercise of whose joint discretion is desired, and an act performed by one or by any number less than the whole is not such an execution of the authority as to bind the principal, if one dies or refuses to act the others have no authority under the joint power, and can not bind the principal; furthermore such agents are bound jointly for acts jointly done and money jointly received. This presumption, however, is not conclusive, and a number less than the whole may act if it is clear from the authority that such was the intention of the principal, or if it appears from his course of dealing or subsequent approval that he has waived the requirement by allowing a number less than the whole to act for him." 2 Corpus Juris, 668; 669.

In construing the power under consideration it is not necessary to resort to any presumption to arrive at the intention of the principal, since the instrument itself plainly prescribes that the agents

thereby appointed *must* act jointly. Neither is it necessary to consider whether the surety company was nevertheless bound on the guardian's bond to which its name was attached as surety by the defendant without authority, because of the fact that the company received the proceeds arising from the execution of such bond. It is well settled that ratification of an unauthorized act of an agent, to be binding upon the principal, must be made with full knowledge on the part of the principal of all material facts relating to the act in question. *Ludden & Bates Southern Music House* v. *McDonald,* 117 *Ga.* 60 (43 S. E. 425); *Foddrill* v. *Dooley,* 131 *Ga.* 790 (63 S. E. 350). But nothing whatever appears in the record from which any inference can be drawn that the surety company ever ratified the imperfect execution of the guardian's bond by receiving the premium therefor with knowledge of the manner of its execution or in any other way. There is an express statutory provision in this State that while all agents may, by an express undertaking to that effect, render themselves individually liable, "every agent exceeding the scope of his authority is individually liable to the person with whom he deals." Civil Code, § 3613.

It is insisted in the brief of counsel for the plaintiff in error that the first count in the petition was insufficient, since no recovery (as sought in the second count, which was stricken) can be had against him as surety on the bond, and that there are no allegations sufficient to constitute a good action ex delicto for deceit. It will be remembered that the demurrer to this count amounted only to a general demurrer, and no specific defect or insufficiency in the allegations of the petition is suggested by any special demurrer. The essential elements to support an action for fraud and deceit are falsity and tendency to deceive, reliance upon such false representations, and resulting damages. There must be both fraud and injury before a recovery can be had, and the injury must result on account of the reliance of the injured party upon the fraudulent conduct or representations of the other. *Washington Post Co.* v. *Sorrells,* 7 *Ga. App.* 774, 776 (68 S. E. 337); *Crawford* v. *Crawford,* 134 *Ga.* 114 (67 S. E. 673, 28 L. R. A. (N. S.) 353, 19 Ann. Cas. 932); *Currie* v. *Collins,* 136 *Ga.* 473 (71 S. E. 798). A material representation falsely made with knowledge of its falsity amounts to actual fraud. *Emlen* v. *Roper,* 133 *Ga.* 726 (66 S. E. 934).

Under the allegations in the first count, the defendant necessarily knew of the limitations upon his authority as one of the two agents appointed by the surety company to execute bonds in its name, but nevertheless executed the guardian's bond without informing the ordinary, the nominal obligee therein, as to this limitation upon his authority, and without any knowledge thereof on the part of the principal on the bond or the ordinary; and it must be held that the execution and delivery of the bond by him in the name of his principal amounted not only to an implied representation that he had power to act alone for the surety company and to bind it by signing its name by himself alone, but to an express representation to this effect. In the absence of any special demurrer, it must be held that the petition sufficiently indicated, by setting out the acts of fraud themselves, that a legal fraud was perpetrated upon the plaintiff by these representations, and that the representations were relied upon and injury finally resulted therefrom to the actual beneficiary under the bond. The fact that the bond was nominally payable to the ordinary does not, in our opinion, affect the right of the beneficiary to bring suit against the agent who attempted to bind his principal as surety thereon without authority. Civil Code, §§ 3054, 3055, 4083. The petition sufficiently set forth a cause of action to withstand a general demurrer.

*Judgment affirmed.*