27167. HAGAN v. ASA G. CANDLER INCORPORATED.

DECIDED MARCH 4, 1939.

*Hendrix & Buchanan, Little, Powell, Reid & Goldstein, B. D. Murphy,* for plaintiff in error.

*Tye, Thomson & Tye, R. A. Edmondson Jr., Edwin L. Sterne,* contra.

MacIntyre, J. This is a suit on a contract against H. T. Hagan for rent for the month of May, 1935, of a storehouse in Atlanta, Georgia. The judge, sitting without the intervention of a jury, found in favor of the plaintiff for the full amount. The defendant moved for a new trial which was overruled and he excepted.

The evidence in part showed that there was a lease contract dated November 28, 1933, between Asa G. Candler Inc., lessor, and Foods Shops Inc., lessee, whereby the lessor leased a certain storehouse for a term of five and one-half years beginning January 1, 1934, and ending June 30, 1939, for a consideration of $500 per month, plus 10 per cent. of the amounts represented by the gross sales of merchandise, and from slot machines or other services sold or received from the demised premises each and every month in excess of $5000 to be paid on the 5th day of each and every month. "The lease contract was signed 'Asa G. Candler Inc., by Chas. H. Candler, president, Foods Shops Inc., H. T. Hagan, president.' On the left of the signatures appears an ink drawing consisting of two concentric circles, with the word 'seal' across the inner circle and the words 'Foods Shops Inc., Atlanta, Ga.' between the circles." Attached to the lease contract as a part thereof was the following written guarantee: "As an inducement for lessor to enter into the lease I guarantee the fixed rental of $500 per month for the first six months of the lease—the cash payment of the first month's rent and each similar payment hereafter made by lessee to be credited against this guaranty. This November 28, 1933. (Sgd) H. T. Hagan (L. S.). (Sgd) C. D. Herren (L. S.)." The said Hagan furnished the plaintiff with a copy of a resolution purported to have been passed at a regular meeting of said corporation authorizing Hagan to enter into said lease agreement. The evidence authorized the judge to find that no such corporation existed at the time of the signing of the lease or at any time thereafter, and that the plaintiff did not know of the non-existence of such purported corporation.

■ The general rule relative to non-existent principals is that one who professes to contract as agent is personally liable *on the contract* if, unknown to the other party, his purported principal is actually non-existent; however, the agent is not liable where the third person has knowledge of the non-existence of the principal, or where there is an agreement or understanding to the contrary.

It is to be remembered, however, that "if an agent, although purporting to be acting for a principal, is in fact acting for himself, he will be personally liable on the contract." 3 C. J. S. 118, § 213; 2 Am. Jur. 248, § 316; *Wells* v. *Fay & Egan Co.,* 143 *Ga.* 732 (85 S. E. 873). The reason for the rule is that there is a presumption that the parties intended to make an enforceable contract, and that generally, where one assumes to act as agent for a principal who has no legal status or existence, he renders himself individually liable on the contract so made. However, if it appears, either by an express agreement or from circumstantial evidence, that it is understood that the agent is not to be responsible, the rule does not apply, and so it has been stated that "an agent is not personally liable where the other party agreed to look for remuneration solely to a particular fund held by the agent for the purpose of his agency although the fund proves inadequate to satisfy the terms of the contract." 3 C. J. S. 119 (19); Downs *v.* Bankhead, 44 App. D. C. 101; Hunt *v.* Adams, 111 Fla. 164 (149 So. 24); Sears, Roebuck & Co. *v.* Wolf, 246 Ill. App. 550, 557. In this case, the evidence undoubtedly authorized a finding that the principal was non-existent, and that its non-existence was known to the defendant and was unknown to the plaintiff.

We come now to the question as to whether proof that the agent, with another party, guaranteed the payment of the rent of the store for a period of six months when the lease was for five and one-half years, would as a matter of law require the judge to find that there was an intent that the agent was not to be responsible in any event even though there was no responsible principal behind him. "An agent may, by personal contract, guarantee performance by the principal." Restatement of the Law of Agency, 625, § 328. Under our law, any property that the lessee had would be liable under a distress warrant for the payment of the rent; and it seems to us that the words of the lease mean that during the first six months of the lease the landlord was looking to the lessee, whoever the law declared him to be, for the payment of the $500 per month rent, or, in the event of default, to the two guarantors, one of whom was the agent who negotiated the lease, and after the first six months rent had been paid, the landlord looked to the lessee. The mere fact that if the gross receipts amounted to more than the named amount, the lessor would get an additional amount

(bonus) would not circumscribe and reduce his remedy for the collection of his $500 rent to 10 per cent. of the gross sales only. It does not seem to us that it was the idea of the lessor to release or exempt any one whom the law made liable, but rather it seems to have been his idea to include all who might consent to become liable.

In other words, the circumstances were not such as to require a finding that both parties understood that the agent would not be responsible in any event even though there was no principal behind him, and that such undertaking was to become a part of the contract. Thus we think that the judge in this case, sitting without a jury, was authorized to find under the evidence that there was no existing principal, and that the agent was undertaking to contract for a principal which had no status or existence, and which could not enforce or incur liability, and that the plaintiff did not know of the non-existence of the principal, and that there was no agreement or understanding that the agent should not be responsible in any event to the plaintiff. The judge having so found the instant case comes under the general rule, and the agent is liable on the contract individually because he assumed to act for a principal who did not exist at the time the contract was made and has never since existed.

The defendant argues that the plaintiff can not sue on the contract, but must bring an action for breach of warranty or an action in tort for deception. This would be true if the case here presented was one where the agent had executed the contract in the name of his *existing* principal without authority from the latter. The authorities are in accord that "an agent who exceeds his authority, so that his principal is not bound, will himself be liable for the damages occasioned to the other contracting party." 2 Am. Jurisprudence, 250, § 319. There is, however, some difference of opinion as to the nature of that liability. "Three forms of remedy have been recognized as available to the other party to the contract, each being based upon a distinction in the nature of the liability: (1) An action against the agent upon the contract as principal in the contract; (2) an action against the agent for damages for the breach of his warranty of authority to execute the contract; and (3) an action in tort for deceit or for falsely assuming authority to act." 2 Am. Jur. 250, § 320. "According to the rule now

prevailing in a majority of the jurisdictions [Georgia included], which is in accord with the rule adopted by the American Law Institute, an agent who, in contracting with a third party on behalf of his principal, so exceeds his authority that the principal is not bound upon the contract, becomes liable to a third party, assuming that such party has no knowledge of the agent's lack of authority, upon an implied warranty of authority, though the agent acts in good faith and believes that he has the authority which he assumes to exercise. In order not to become so bound the agent should manifest that he does not make such warranty. The damages recoverable will include any loss which the third party has suffered through not having a valid contract." 2 Am. Jurisprudence, 252, § 322. It will be noted that this rule assumes that there is a legally competent, *existing* principal. *Ruffner* v. *Dunlop*, 32 *Ga. App.* 693 (124 S. E. 544); *Pelotte* v. *Simmons*, 41 *Ga. App.* 198, 204 (152 S. E. 310); *Peeples* v. *Perry*, 18 *Ga. App.* 369, 373 (89 S. E. 461).

However, there is another rule which prevails in Georgia and other States which is applicable when an agent undertakes to contract for a principal which has *no existence* and which can incur no enforceable liability. This rule is well expressed in 2 American Jurisprudence, 248, § 316, as follows: "It is a general rule that one who assumes to act as agent for a principal who has *no* legal status or *existence* renders himself individually liable on contracts so made." (Italics ours.) The rule that the agent who exceeds his authority so that his principal is not bound presupposes an *existing principal,* and the agent is liable on an implied warranty and can not be sued on the contract, is recognized and followed in *Ruffner* v. *Dunlop,* supra, and other Georgia cases. However, the rule that one who assumes to act as agent for a principal who does *not exist* is himself individually liable upon the contract is controlling in the instant case. *Wells* v. *Fay & Egan Co.,* supra; *Powers* v. *Brunswick-Balke-Collender Co.,* 19 *Ga. App.* 706 (2) (91 S. E. 1062); *Shiflett* v. *John W. Kelly & Co.,* 16 *Ga. App.* 91, 94 (84 S. E. 606); Bryce *v.* Bull, 106 Fla. 336 (143 So. 409); Redden *v.* Capps (Tex. Civ. App.) 15 S. W. (2d) 670; Medlin *v.* Ebenezer Methodist Church, 132 S. C. 498 (129 S. E. 830).

■ The defendant claimed that the plaintiff is estopped because "all through the negotiations and during the entire period

that the lease was operating, it dealt with the Foods Shops Inc., as a corporation." We do not think it can be said that the plaintiff, because he did something that the defendant by his misrepresentations induced the plaintiff to do, is barred from setting up his rights where the misrepresentations were known to be untrue by the defendant but not by the plaintiff. Mason v. St. Albans Furniture Co., 149 Fed. 898. It seems to us that here the defendant, not the plaintiff, was silent as to his alleged rights when he ought to have spoken, and that the defendant, not the plaintiff, should not now be heard to speak when he ought to be silent. The plaintiff is not estopped from setting up his rights under the contract.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*