## HAGAN *v.* ASA G. CANDLER INCORPORATED.

No. 12836. October 13, 1939. Rehearing denied November 17, 1939.

Chief Justice Reid being disqualified, Judge Knox was designated for this case.

*W. F. Buchanan* and *Powell, Goldstein, Frazer & Murphy,* for plaintiff in error.

*Tye, Thomson & Tye* and *R. A. Edmondson Jr.,* contra.

Knox, Judge. Asa G. Candler Inc. brought suit against H. T. Hagan, in the municipal court of Atlanta, to recover rent alleged to be due on a certain lease or contract of rental. Briefly stated, the petition set forth the following contentions: On November 28, 1933, a contract (a copy of which is attached to the petition) was executed between Asa G. Candler Inc. and Food Shops Inc. This contract was executed on behalf of Food Shops Inc. by H. T. Hagan as president. In the negotiations leading up to the exe-

cution of the contract Hagan represented to the officers and agents of Asa G. Candler Inc. that it was entering into a contract with a corporation known as Food Shops Inc., of which he was president; that he was duly authorized to execute said contract on behalf of said corporation, and as proof of said representation he furnished said officers and agents with a copy of a resolution purporting to have been passed by the directors of Food Shops Inc., which expressly authorized Hagan to execute the contract on its behalf. Under the terms of said contract Asa G. Candler Inc. rented and leased to Food Shops Inc. the premises located at number 60 Peachtree Street in the City of Atlanta, the term of said rental being for a period of five and one-half years from the first day of January, 1934. The amount of rental specified in the contract was the sum of $500 per month, plus ten per cent. of the amounts represented by the gross sales of merchandise and from slot machines or other services sold or received from the demised premises each and every month, in excess of $5000. The rental specified was to be paid on the 5th day of each and every month. At the time the contract was executed and at the time the suit was filed that no such corporation as Food Shops Inc. was in existence, but this fact was unknown to plaintiff. By reason of these facts that the contract was one between Asa G. Candler Inc. and H. T. Hagan individually. The rental for the month of May, 1935, was due and unpaid and Hagan failed and refused to pay it. The plaintiff prayed for a judgment of $500 as rental for May, 1935, and for interest on that amount.

To this petition Hagan filed his answer in which he admitted the jurisdiction of the court and that portion of the petition relating to the amount of rent specified by the contract and the time of payment. All the other allegations of the petition were denied.

The case was tried before the judge of the municipal court, without a jury. He rendered judgment in favor of the plaintiff in the amount sued for. Hagan excepted, and the Court of Appeals affirmed the judgment (59 *Ga. App.* 587, 1 *S. E.* 2d, 693). The case came to the supreme court on writ of certiorari to review the decision of the Court of Appeals.

On the trial of the case it was admitted that the contract was entered into, and that the same was executed on behalf of Food Shops Inc., by Hagan as president. It was likewise admitted

that no such corporation was in existence. The minimum monthly rental specified in the contract was $500, and there appears to have been no dispute that the rental accruing for the month of May, 1935, was due and unpaid. On the issue as to whether or not Asa G. Candler Inc. had knowledge of the non-existence of Food Shops Inc., the evidence was conflicting, but the judge as trior of facts resolved this issue in favor of the plaintiff. The evidence authorized this finding, and for the purpose of this discussion the plaintiff's contention in this connection must be accepted as true. It therefore appears that the controlling question before this court for determination is whether or not the plaintiff, under the circumstances governing this transaction, was legally authorized to treat the contract as the individual obligation of Hagan, and to enforce the same against him as such. Assuming that the plaintiff's contentions are the truth of the controversy, it is admitted by Hagan's attorneys that he is liable for any damages the plaintiff may have sustained by reason of having entered into the contract, and that two remedies are available to it in enforcing this liability. One is an action for deceit, based upon the misrepresentation of Hagan to the effect that Food Shops Inc. was an existing corporation, and that he was authorized to execute the contract in its behalf. The other is an action for breach of an implied warranty, predicated upon the well-recognized principle of law that one executing a contract for another as agent impliedly warrants both the existence of the principal and his authority to act for such principal. Neither is an action on the contract, and the measure of recovery in each instance is the damages actually sustained by the opposite party. The plaintiff however, did not pursue either of these remedies but elected to treat the contract as the individual obligation of Hagan, and sued him to recover the accrued rents that were due and unpaid. This is an action arising ex contractu on the particular contract, and the measure of recovery is fixed by the terms of the contract.

The question whether or not an agent who executes a contract on behalf of a non-existent principal is himself liable on the contract has provoked considerable discussion and created a wide diversity of opinion in the different jurisdictions of the country. In some States, notably North Dakota, the liability of the agent on the contract has been established by statute. In Florida, South

Carolina, and some other jurisdictions the general rule of law fixing the liability of the agent on the contract is recognized and approved, although it is not embodied in the statute law of these States. This general rule of law is expressed in 2 American Jurisprudence, 248, § 316, in the following language: "It is a general rule that one who assumes to act as agent for a principal who has no legal status or existence renders himself individually liable on contracts so made." However, it appears that the general rule has been definitely repudiated in New York, Massachusetts, and a number of other jurisdictions. In these States the opposite party to the contract, in seeking redress, is limited to the action arising in tort. Georgia has no statute fixing the liability of the agent on the contract; so it must be determined if the general rule of law above stated is recognized and approved in this State. The Court of Appeals in this case based its decision upon the general rule of law, stating it as follows: "The general rule relative to non-existent principals, is that one who professes to contract as agent is personally liable *on the contract* if, unknown to the other party, his purported principal is actually non-existent, however, the agent is not liable where the third person has knowledge of the non-existence of the principal, or where there is an agreement or understanding to the contrary. It is to be remembered, however, that 'if an agent, although purporting to be acting for a principal, is in fact acting for himself, he will be personally liable on the contract.'"

In its decision the Court of Appeals cited the general rule as expressed in 2 Am. Jur. supra, several decisions from other jurisdictions, and the following decisions rendered by the courts of this State: *Powers* v. *Brunswick-Balke-Collender Co.,* 19 *Ga. App.* 706 (91 S. E. 1062) ; *Shiflett* v. *John W. Kelly & Co.,* 16 *Ga. App.* 91 (84 S. E. 606) ; *Wells* v. *Fay & Egan Co.,* 143 *Ga.* 732 (85 S. E. 873). Inasmuch as this court now has under consideration only the question as to whether or not the general rule of law above quoted is recognized and approved in this State, this discussion will be limited to a consideration of the Georgia cases cited. It is contended that these cases do not support the decision rendered by the Court of Appeals, or recognize or approve the rule of law upon which it is predicated. In order to pass upon the merits of this contention it is necessary to briefly review the decisions in

question. In *Powers* v. *Brunswick-Balke-Collender Co.*, suit was instituted against E. H. Spiro, on a contract involving purchase and sale of certain personal property. Spiro attempted to avoid liability, on the ground that in purchasing the property he had acted merely as an agent for the Macon Billiard Parlor, which was a projected corporation in the course of organization, but to which no charter had been granted. In signing a receipt and invoice involved in the transaction Spiro had followed his signature with the words, "In behalf of Macon Billiard Parlor." A portion of the purchase-price was paid in cash from a fund raised by the organizers of the corporation, and Spiro executed promissory notes and a retention-title contract for the balance. They were signed by Spiro as an individual. The Court of Appeals held that the contract was the individual obligation of Spiro, and in so doing called attention to the fact that his purported principal was not in existence, and therefore could not have any agent, make any contract, or purchase any property. The words, "In behalf of Macon Billiard Parlor" following Spiro's signature to the receipt and invoice involved in the transaction were held mere descriptio personæ or surplusage. In this connection cognizance is taken of the fact that Spiro signed the notes and contract individually; and this no doubt was an inducing factor in the court's ruling that the contract was the obligation of Spiro. Aside from this, however, the court throughout the decision evidenced an inclination, impliedly at least, to give recognition to the rule of law now under consideration.

In *Shiflett* v. *John W. Kelly & Co.*, suit was instituted against Shiflett as an individual doing business under the trade-name "Cosmopolitan Club." The suit was an action upon an open account for whiskies sold by John W. Kelly & Company to the Cosmopolitan Club. This was what was commonly known as a "locker club," of which Shiflett was a member, he being its treasurer and steward. It appeared that the whiskies had been ordered by Shiflett for the club, and that his personal employee received them in the clubroom. Shiflett contended that the Cosmopolitan Club was an offspring of the Farmers Life Confederation, a mutual benefit association which had been chartered as a corporation by the superior court of Fulton County; and that this corporation under its charter was authorized to maintain locker-clubs

in connection with its other business. The Court of Appeals held that the Farmers Life Confederation was a fraternal insurance society which had no charter authority to maintain locker-clubs or incur debts for intoxicating liquors; and not having authority to incur an indebtedness of this nature, it could not delegate such authority to another. It was held that the indebtedness sued on was the obligation of the Cosmopolitan Club; and that as this club was merely an unincorporated association or organization having no legal status, Shiflett as the agent who had ordered and received the whiskies on behalf of such club was liable for the indebtedness. The judgment of the trial court against him was affirmed. It will be noted that the suit was an action arising ex contractu, and that the liability imposed upon Shiflett by the decision of the court was a liability on the contract. In the light of such ruling, it can hardly be contended that the Court of Appeals did not give recognition and approval to the rule of law now under discussion.

*Wells* v. *Fay & Egan Co.,* supra, is closely akin to the case now under consideration. It appeared that certain parties were interested in the organization of a corporation to be known as Ficklen Spoke & Handle Company. Before the corporation received its charter, and before it had completed its organization, the parties interested in its organization authorized the purchase of certain machinery from Fay & Egan Company. The order for the machinery was signed, "Ficklen Spoke & Handle Co., by L. M. Wells." After the machinery was received, notes for the purchase-price were executed on the authority of the same organizers, signed, "Ficklen Spoke & Handle Company, per R. K. Carruth, Sec. & Treas." Suit on the notes was instituted by Fay & Egan Company against these parties as partners operating under the trade-name of Ficklen Spoke & Handle Company. Four of the defendants filed answers denying liability, on the ground that the Ficklen Spoke & Handle Company was a corporation, and that the indebtedness sued on was the obligation of the corporation. This court brushed that contention aside, in the following language: "Persons acting in concert to bring about the formation of a corporation are responsible for their acts. Where they buy machinery, receive it into their possession, and authorize one of their number to give a note for the purchase-price, they can not escape liability on the theory that they contemplated the organization of a cor-

poration for which they intended the machinery. If one contracts as agent, when in fact he has no principal, he will be personally liable. A promoter, though he may assume to act on behalf of the projected corporation and not for himself, can not be treated as an agent of the corporation, for it is not yet in existence; and he will be personally liable on his contract, unless the other party agreed to look to some other person or fund for payment." Such an agreement might, of course, be either express, or implied from circumstances. In view of the above-quoted language, it must be admitted that the court in this case followed the general rule of law, and gave sanction to the legal principle that agents are liable on contracts which they enter into on behalf of non-existing principals. It is insisted, however, that this language was obiter, by reason of the fact that the court was not passing or attempting to pass on any question requiring a ruling upon this principle of law. It is asserted that the case then under review was one in which the defendants had been sued as partners, under the familiar rule of law that organizers of a corporation who transact business in the corporate name before its organization has been completed will be deemed partners operating under the corporate name as a trade-name. It is therefore contended that there was no issue in the case which required a ruling on the principle of law here involved, and that the language used was for this reason mere dictum. There is no merit in this contention. It is true that the defendants were sued as partners, and that the suit was predicated on the legal principle just stated. It must be remembered, however, that four of the defendants involved filed answers in which they denied liability, and pleaded that the notes sued on were the obligation of the corporation. This defense was based on the theory that the notes were executed in the name of the corporation, and that it was intended that it should be bound therefor. By necessary implication such defense likewise included a contention that the defendants were not liable on the obligation, for the reason that the notes were not executed in the name of the defendants, and there was no intention to bind them for the payment of the same. It was necessary for the court to determine these contentions. It did so by holding that the notes sued on were not the obligation of the corporation, for the reason that it was not yet in existence, and therefore could not have agents or enter into contracts. It was

held that all the defendants were liable on the notes, by reason of the fact that they were all jointly responsible for their execution in the name of the corporation, and thus became joint agents in the execution of the contract on behalf of a non-existent principal. This ruling was necessary for a proper adjudication of the issues involved in the case, and the language used in expressing it was not obiter.

A contention is made that the decision of the Court of Appeals in this case is contrary to the rulings expressed by that court in *Ruffner* v. *Dunlop*, 32 *Ga. App.* 693 (124 S. E. 544), *Peeples* v. *Perry*, 18 *Ga. App.* 369 (89 S. E. 461), *Pelotte* v. *Simmons*, 41 *Ga. App.* 198 (152 S. E. 310), and *Hill* v. *Daniel*, 52 *Ga. App.* 427 (183 S. E. 662). With the exception of *Pelotte* v. *Simmons*, which apparently has no application to this case, those were cases in which agents executed contracts on behalf of existing principals, but failed to bind the principals, by reason of the fact that they were lacking in authority to do so. This lack of authority existed for different reasons. In some instances the agent either had no authority to act for the principal, or else exceeded his authority in executing the contract. In others it appears that the principal himself was not authorized to enter into the contract which the agent executed on his behalf. In these cases the Court of Appeals held that the agent was not liable on the contract, and that they could not be enforced against him. This ruling was based on the reasoning that the contract could not be presumed to be the individual obligation of the agent, for the reason that it was not executed in his name and was lacking in apt words necessary to indicate an intention to bind him. It is contended that this is the true principle of law of force in this State, and that the ruling expressed by the Court of Appeals in this case is contrary thereto. The Court of Appeals distinguished the case now under review from those under discussion, by stating that those decisions presupposed an existing principal. It is asserted, however, that this is a matter of no consequence, as the liability in each instance arises from the same reason. This reason is the lack of authority in the agent to bind his principal. It is insisted that there can be no logical distinction between cases in which the failure to bind the principal in one instance is occasioned by a lack of authority on the part of the agent and in the other by lack of a principal to

be bound. Notwithstanding the apparent force of this reasoning, there is a distinction which lies in the different legal presumptions arising in the two classes of cases. In every contract there is a legal presumption that the parties thereto intend that it shall be an enforceable obligation. This is true whether the principals actually enter into the contract by themselves or through the medium of agents. In cases where the contract is entered into by an·agent in the name of an existing principal, there is an additional presumption that the agent intended to bind the principal. For this to be true, however, it must appear, not only that the contract is entered into in the name of a principal who is in existence, but also that there is nothing in the contract indicating an intention to bind the agent. Where such appears from the contract, the legal inference is that the principal and not the agent is to be bound. On the contrary, where the contract is entered into by an agent in the name of a non-existent principal, no such inference is possible; for it would be a legal absurdity to assume that an agent intended to bind a principal who was not in existence. Under such circumstances, the agent having entered into a contract which as a matter of legal presumption he intends can be enforced, and it being manifestly impossible to enforce the contract against a principal who has no existence, it is assumed that the agent intended that the contract should be enforced against him. It therefore appears that the decision of the Court of Appeals in this case is not contrary to the rulings in the cases we have had under discussion.

It is also contended that the decision of the Court of Appeals is contrary to the rulings of this court in *Harp* v. *National Bank,* 173 *Ga.* 768 (161 S. E. 355) ; *Lenney* v. *Finley,* 118 *Ga.* 718 (45 S. E. 593) ; *Hollingsworth* v. *Georgia Fruit Growers Inc.,* 185 *Ga.* 873 (196 S. E. 766). A careful consideration of those cases, however, fails to disclose any ruling which is contrary to the ruling of the Court of Appeals in this case. While, as stated above, there is no statute on the subject in this State, yet the unanimous decision of this court in *Wells* v. *Fay & Egan Co.,* supra, has the force of a statute unless and until it is reviewed and overruled in the manner prescribed by law. Code, § 6-1611; *Lucas* v. *Lucas,* 30 *Ga.* 191, 202 (76 Am. D. 642) ; *Heard* v. *Russell,* 59 *Ga.* 25, 54; *Calhoun* v. *Cawley,* 104 *Ga.* 335, 344-45 (30 S. E. 773). In further sup-

port of the rule enunciated in the *Wells* case, see: Code, §§ 105-105, 20-703; *Meinhard* v. *Bedingfield Mercantile Co.*, 4 *Ga. App.* 176 (3) (61 S. E. 34); *Rosenheim Shoe Co.* v. *Horne*, 10 *Ga. App.* 582 (3) (73 S. E. 953); *McRee* v. *Quitman Oil Co.*, 16 *Ga. App.* 12 (2) (84 S. E. 487); Restatement of the Law of Agency (American Law Institute), 721, § 326; 3 C. J. S. 118, § 213; 7 R. C. L. 85, § 64.

The application for certiorari contains an assignment of error to the effect that the Court of Appeals erred in holding against the estoppel urged by the plaintiff in error. Inasmuch as no reference to this assignment of error is made in the briefs submitted to this court, it is treated as abandoned.

*Judgment affirmed. All the Justices concur.*