## MEEKS v. ADAMS LOUISIANA CO. et al.

### No. 73.

District Court, S. D. Georgia,
Waycross Division.

March 29, 1943.

---

Heath & Heath, of Douglas, Ga., and Benj. E. Pierce, Sr., of Augusta, Ga., for plaintiff.

Blalock & Blalock (by J. D. Blalock) and Wilson, Bennett & Pedrick, all of Waycross, Ga., for defendants.

LOVETT, District Judge.

Mrs. Amy Meeks, wife of S. A. Meeks, seeks to cancel an oil and gas lease on certain farming lands she claims to own in Coffee county, Georgia, and on which she resides. The lease purports to have been signed by "Mrs. S. A. Meeks": Alleging she did not sign it, that it is not her act or deed, she wants it removed as a cloud on the title of her lands.

The defendants are the Adams Louisiana Company, the named lessee, a foreign corporation, and other non-resident persons who claim fractional interests in the leasehold through assignments from the lessee. Admitting the plaintiff's title and not asserting that she personally executed the lease, the defendants set up in their answer that she authorized its execution in her name by her husband, that later she ratified his act in her behalf and that she is now estopped by her conduct from attacking the validity of the lease.

The case was brought in the state court on July 31, 1941, and removed to this court because of the diversity of citizenship of the parties. The requisite jurisdictional amount in controversy seems to be conceded by all parties.

## Facts.

The facts, many of which are not in dispute, as I find them, are as follows:

Mr. and Mrs. Meeks, husband and wife, live together on a farm. They control three separate parcels of land, operated by one or the other or both of them in the usual manner Georgia farms are conducted. Before April 14, 1937, the date of the oil lease in controversy, Mr. Meeks owned two of the parcels of land, one consisting of 245 acres and the other of 8 acres. Mrs. Meeks owned the other parcel of 106 acres, which had been purchased with funds she received as an inheritance from her father and which had always been her separate estate. Becoming involved financially and, as I interpret the testimony, for the purpose of putting the property beyond the reach of his creditors, Mr. Meeks conveyed the two parcels he owned to his wife and the deed of conveyance was duly recorded. The exact date of the conveyance has not been shown, but it antedated the oil lease in controversy. At all times subsequently the wife continued to treat the land formerly owned by her husband as his property. He managed and controlled it; he conducted the farming operations, giving crop mortgages at will and apparently without consultation with his wife. Mrs. Meeks testified: "In a way I considered that his land and permitted him to handle it". Mr. Meeks testified that after he conveyed his land to his wife he continued to operate it "about the same way" he operated it before the conveyance, and "she operated the 106 acres before and since". The evidence discloses that the husband always regarded the land he formerly owned as his own and the wife regarded the parcel purchased with her funds as her separate estate. Outside of the presumption of the delivery of the deed from the husband to the wife which the recordation creates there is no positive evidence that the deed was ever delivered to the wife or that it has ever been in her custody or control.

During the year 1937 explorations for the discovery of oil were made in the territory where the farm of Mr. and Mrs. Meeks was located. Leases were taken in the conventional form on many thousands of acres of land in that territory. This lease— as well as the leases usually taken in the community—recites a cash consideration of $1 in hand paid and contains a promise by the lessee to pay to the lessor a royalty of one-eighth of the oil produced and saved from the land. There are other provisions for royalties on gas and other minerals. The primary term of the lease is 10 years but under certain conditions it may be extended. The lease contains further provisions to the effect that if operations for drilling are not commenced on the land within two years the lease shall terminate unless on or before that time the lessee pays or tenders to the lessor, or places to the credit of the lessor in a named bank, the sum of 5¢ per acre as in the nature of rental for continuation of the lease for a period of 12 months. Successive tenders for each additional 12 months of the term, under like conditions, are also provided for in the lease. The lessor warranted the title to be good.

The lessee engaged a local representative, its counsel in the county, to procure leases for it and on or about April 14, 1937 he drove to the home of Mr. and Mrs. Meeks in an automobile and there he was greeted by Mr. Meeks. Then and there and for the first time he discussed with Mr. Meeks a proposition with respect to an oil lease, and Mr. Meeks accepted the proposition. There were certain printed terms of the lease which Mr. Meeks thought should be modified, and after the two had discussed the subject and the lawyer for the lessee, who was also the scrivener, had been provided with a description of the land and certain insertions were made with respect to damage to timber and growing crops, the lessee's counsel was informed by Mr. Meeks that Mrs. Meeks owned the land. Counsel then informed Mr. Meeks that she should sign the lease and Mr. Meeks replied that would be agreeable. Counsel then gave Mr. Meeks $1 in coin and a receipt therefor and the original lease to be signed by Mrs. Meeks. This conversation took place outside of the residence at the automobile of lessee's counsel, and he did not enter the home for the purpose of having or seeing Mrs. Meeks execute the lease. Instead, Mr. Meeks took the lease into the home, and on finding that his wife was not there he signed her name to the lease and to the receipt, returning within a few minutes and delivering the lease and the receipt to lessee's counsel. There is no dispute about the fact that Mr. Meeks actually signed the name "Mrs. S. A. Meeks" to the lease, though he did not inform lessee's counsel of that fact at that time, nor did lessee's counsel inquire about it. Upon returning to his office, lessee's

counsel and a notary public in his office attested the signature of Mrs. S. A. Meeks to the lease, though admittedly neither of them saw her sign it, and the notary public was not even present at the Meeks' farm when Mr. Meeks signed it. The lease was promptly recorded in the office of the clerk of the superior court of the county in which the land was situate. Some three or four weeks later Mrs. Meeks learned from her husband that an oil lease had been executed by him, and she expressed disapproval of his action, though apparently at that time she did not clearly understand that the land she had always regarded as her separate estate was included in the lease. Several months later, perhaps almost as much as a year, learning definitely that the parcel of land purchased with her own funds had been included in the lease, she disavowed her husband's act and so informed a representative of the lessee.

Pursuant to the several leases obtained from many landowners in that section the lessee and its associates did considerable geophysical and geological investigation and exploration in the territory at considerable expense, digging test holes of shallow depths in the ground, exploding dynamite, etc., though it appears none of these tests were actually made on the land occupied by Mr. and Mrs. Meeks. These investigations and explorations have continued, and a well to be sunk some 4,500 feet is now being drilled on lands close by the lands in controversy. The success of the undertaking is not yet assured, though, as often happens, the mere sinking of a deep well for oil has caused much excitement in the community, and has brought about speculative trading in leases, royalties and the like.

On May 29, 1941 Mr. and Mrs. Meeks obtained a loan of $1,200 from the Federal Land Bank Commissioner, giving him as security therefor a deed to secure debt on the two parcels of land conveyed by Mr. Meeks to Mrs. Meeks. In that deed there is a recital that it is made subject to certain oil leases, especially the one of April 14, 1937, from Mrs. Meeks to the Adams Louisiana Company, reference being made to the book and page where recorded. The deed also contains a recital that the borrowers specially assign and transfer to the land bank commissioner "all the rights, royalties, bonuses, dividends and other income that may accrue" to them by reason of the oil lease. This loan was paid

by the borrowers on September 18, 1942, and on that date the deed given to secure debt was marked canceled and satisfied.

Within the two year period allowed for the commencement of drilling operations, and subsequently, plaintiff repudiated the lease and so notified the lessee. Also within that period the bank named as the depository in which funds might be placed to plaintiff's credit to obtain an extension of the time for drilling a well declined to act in that capacity. Plaintiff refused when requested to name another substitute bank for the purpose, although the lease if binding required her to do so. Lessee being in doubt as to the proper person to receive the money required to be paid to obtain the extension, on April 13, 1942, filed an amendment to its answer and asked to be allowed to pay the money into the registry of the court, and also sought to have the Federal Farm Mortgage Corporation (alleged assignee of the land bank commissioner) made a party to the cause. The money was so paid under an appropriate order of the court but no new parties were made, as the debt owing by the plaintiff to the Land Bank Commissioner was paid before a hearing on the rule nisi, although the mortgage corporation filed an answer in this court.

### Opinion.

This case is in equity. Its disposition should be governed by equitable considerations. The plain equities at once suggest that a distinction should be made between the lease of the lands always owned by the wife and the lease of the lands conveyed to her by her husband. He controlled and managed the latter; she, the former. He signed the lease. She did not. The lessee was wholly lacking in dilgence in obtaining the lease. It not only failed to see to its proper execution or attestation, but its representative improperly made himself an attesting witness and then caused an official witness to attest the signature of the purported lessor in violation of his duty as an officer.

1. Ownership of the 8 and the 245 acre tracts.

The suit seeks to cancel the lease as a whole. However, the two tracts of land at one time owned by the husband are separately described in the lease. Title to them is either in husband or wife and as I view the evidence it is of no consequence in so far as these tracts are concerned whether he or she be treated as their real

owner, for in neither event can she cancel. If there was a valid constructive delivery through recordation of the deed, title is in Mrs. Meeks, Wellborn v. Weaver, 17 Ga. 267(13), 63 Am.Dec. 235; Daniel v. Stinson, 179 Ga. 701, 177 S.E. 590, and were this a proper case and collusion against creditors involved, Mrs. Meeks would be estopped from having the deed to her canceled. Bowen v. Bowen, 182 Ga. 299, 185 S.E. 312; Clowers v. Clemons, 185 Ga. 567, 570, 196 S.E. 28. The estoppel of the grantor to assert title in such instances is equally complete. Ellis v. Rudeseal, 56 Ga.App. 210, 192 S.E. 554; Id., 184 Ga. 519, 191 S.E. 913.

Treating Mrs. Meeks as the true owner of the two tracts, it is clear that she ratified the lease of those parcels to the oil company by her husband when she joined in the execution of a security deed conveying them subject to, and assigning royalties under, such lease. Armour Fertilizer Works v. Maddox, 168 Ga. 429(2), 148 S.E. 152; Greene v. White, 137 Tex. 361, 153 S.W.2d 575, 136 A.L.R. 626. On the other hand, if being undelivered his deed did not operate to divest Mr. Meeks of title or if the parties were permitted inter se to regard such a conveyance as inoperative, the result is the same. In that event the lease of the two tracts would be valid as against Mr. Meeks since an agent impliedly warrants his authority and is personally obligated under a contract made in the name of a non-existent principal. Restatement, Agency, Sec. 329; 2 Am.Jur., Agency, Secs. 322, 316; Hagan v. Asa G. Candler, Inc., 59 Ga.App. 587, 1 S.E.2d 693; Id., 189 Ga. 250, 5 S.E.2d 739, 126 A.L.R. 108.

This preliminary discussion is necessary to an understanding and determination of the vital question of the validity of the lease as it affects the status of the tract of 106 acres purchased originally by Mrs. Meeks with her own funds and always treated as her own separate estate.

2. Validity of Lease of 106 Acre Tract.

The evidence is convincing that Mrs. Meeks did not authorize her husband, expressly or by implication, to lease this tract. More than mere verbal authority would be necessary, in all events, to satisfy the Statute of Frauds where as here the term of the lease is over one year.

Ga. Code, Secs. 61-102, 20-401(4); Baxley Hdw. Co. v. Morris, 165 Ga. 359(1) (6), 140 S.E. 869; Byrd v. Piha, 165 Ga. 397(2), 141 S.E. 48. To bind the principal by such a contract an agent's authority must be clothed with like formality. Ga. Code, Sec. 4-105; Pollard v. Gibbs, 55 Ga. 45, 46; Byrd v. Piha, supra; Blanchard & Calhoun Realty Co. v. Comer, 185 Ga. 448, 451(1), 195 S.E. 420.

Undoubtedly there may be conduct by the parties or by the principal himself of a sort that will dispense with the requirement of the Statute of Frauds and of the rule that the authority of the agent must be in the same form as the contract itself. Morris v. Battey, 28 Ga.App. 90, 110 S.E. 342; Lynch v. Poole, 138 Ga. 303, 75 S.E. 158; Baxley Hdw. Co. v. Morris, supra.[1] This case might very properly be disposed of at this point by deciding whether it is one of exception or rule. However, I shall proceed for the present as though the question of formality of ratification is not involved, examining the facts in the light of the general law governing ratification of unauthorized acts of another.

3. Ratification.

Ratification of an agent's unauthorized act may be effected in a number of ways. Failure to repudiate within a reasonable time is one. Brooke & Co. v. Cunningham Bros., 19 Ga.App. 21, 22(5), 90 S.E. 1037; Mendel v. Converse & Co., 30 Ga.App. 549, 556(30) 118 S.E. 586. Acquiescence or silence implying consent is another. Ga.Code, Sec. 4-303; Owsley v. Woolhopter, 14 Ga. 124(4). Ratification may also be inferred from the principal's acceptance of benefits of the unauthorized act. Armour Fertilizer Works v. Maddox, supra; Restatement, Agency, Georgia Annotations, Secs. 98 and 99.

The evidence, however, impels to none of these conclusions. Unquestionably Mrs. Meeks repudiated so much of the lease as affected her own land. From the start she expressed disapproval of her husband's act in connection with the tracts which were regarded as his and within what I deem and hold to be a reasonable time after becoming definitely apprised of her husband's action in leasing her own land she disavowed the lease and so informed the lessee. Unless joining with her husband in a security deed upon the

---

[1] This case involved a suit for cancellation of a lease to which a husband had signed his wife's name in excess of his authority.

lands he formerly owned requires a contrary view, I can not see any conduct on the part of Mrs. Meeks after the lease was entered into which can be considered as constituting a ratification of her husband's act in signing her name to the lease.

4. Part Ratification.

It is insisted by the lessee that by ratifying the lease of the 245 and 8 acre tracts Mrs. Meeks perforce ratified the whole, including her own tract.

Beginning with Hodnett v. Tatum, 9 Ga. 70, numerous decisions in Georgia affirm the rule that one can not ratify a contract in part and disavow it in part, ratification of the part being ratification of the whole. The principle is codified as Sec. 4-302 of the Code of Georgia.

The argument that ratification of Meeks' act in leasing the 106 acre tract followed ratification by Mrs. Meeks of the lease of the other two parcels is necessarily based on the premise that title to the latter tracts was in her rather than in him. I am not at all sure that this does not assume too much. While the paper title was in the wife both Mr. and Mrs. Meeks regarded the land as his. The record title apparently did not induce the lessee to make the contract in the wife's name. The evidence suggests the lessee did not know who was the owner until the husband informed its representative that title was in the wife. If title was in her husband, then Mrs. Meeks' action in executing the security deed subject to the oil lease could have no significance as far as ratification is concerned, for she could not ratify an act in which she was not the principal. Under this view of the case there would be no occasion to apply the "part ratification" doctrine.

But even if we assume that the legal title to the 245 and 8 acre tracts vested in Mrs. Meeks under the deed from her husband, I do not see how things stand differently. The rule of part ratification is founded upon the sound doctrine that one ought not to be permitted to elect to enjoy the benefits of an unauthorized act by an agent and at the same time renounce its asperities. In ratification the good and the bad are inseparable.

But where has Mrs. Meeks enjoyed any benefit, at least up to now, from her husband's act in executing the lease of the two tracts? Except as she now seeks to cancel the lease in its entirety she asserts no title. She has consistently indicated that she had no interest in the lease of the two tracts by Mr. Meeks. Neither royalties nor rent have come to her from the lease. The rule of part ratification- if applied here would be a mere mechanical process of law unrelated to the realities of the situation. I do not doubt that in executing the deed to secure debt conveying the two tracts to the Land Bank Commissioner subject to the oil lease Mrs. Meeks was utterly unaware that she was doing anything which might or ought to affect the 106 acre tract. Cf. Delray, Inc. v. Reddick, 194 Ga. 676, 22 S.E.2d 599(7), 603. Knowledge of all the facts in part ratification appears necessary if it is to constitute ratification of the whole. Mechem on Agency (2d ed.) 1, p. 301, Secs. 409, 410; 2 C.J.S., Agency, § 42, page 1081; 2 Am.Jur., Agency, p. 179, Sec. 224; 1 Am. and Eng. Enc. of Law, p. 1193.

But the rule mentioned is by no means an unbending one. It is not to be applied where the contract is severable or divisible. Mechem on Agency, 1, p. 308, Sec. 415; 2 C.J. Agency, p. 484, § 100; 2 C.J.S., Agency, p. 1145, § 66, note 97. The contract here purported to lease three separate parcels, having different lot numbers—not one tract composed of several parcels. The distinct identity and separate ownership of the three tracts was far from fictional. It was preserved by the method of farming operations, in the conception of ownership by the Meeks, and in the manner of obtaining loans on the property. Since the paid consideration of the lease was only One Dollar—and that never reached Mrs. Meeks—no question of severability of the rental arises. Under the circumstances, were a decision on this question inescapable, I would be loath to hold that a purely constructive and technical ratification of an agent's act as to two tracts (which the alleged principal regarded as the agent's own) was an irrevocable ratification of the lease as it affected the third tract (which admittedly was always hers).

In the Restatement of the Law of Agency, 1, Sec. 96, after stating the general rule, it is said:

"Comment:

"b. The rule stated in this Section applies only where the purported agent has entered into a single transaction; it has no application where he has conducted several in-

dependent transactions at approximately the same time or during the same general course of conduct."

"Illustrations:

"4. Purporting to act for P but without power to bind him, A sells a horse for $200, and then sells a cow for $60. On learning the facts, P writes the purchaser: 'You may keep the horse, but the cow went too cheaply'. There is ratification of the sale of the horse but not of the cow.

"5. Without power to bind P, A takes the place of P's clerk and delivers goods to T, B, and C. P affirms the delivery to T. He does not thereby ratify the delivery either to B or to C."

"Comment:

"c. Where a person affirms acts done on his account by one intending to act as his servant, he may affirm the entire conduct of the purported servant or only portions of it; he may not, however, affirm a part of a transaction without affirming that which is incidental to it."

I think the lease of the three distinct parcels of land should be looked upon as independent transactions, and for that reason, among others, the rigid rule of part ratification should not be applied. In a case of this kind to hold the rule inflexible is to make it inequitable. This I am unwilling to do.

5. Estoppel.

So much as to ratification. It remains to be seen whether any estoppel has interposed itself as the only answer the lessee can make to the otherwise fatal want of authority to Mr. Meeks to lease the 106 acre tract. Estoppel differs from ratification in that in the former there is an inducement to a person to act to his prejudice, wanting in the other. 2 Am.Jur., Agency, p. 172, Sec. 214.

To assert an estoppel in pais one must show that he has lost or the other party gained something which makes it unjust for the latter to insist upon pre-existing rights. Southern Mfg. Co. v. R. L. Moss Mfg. Co., 13 Ga.App. 847, 848(3), 858, 81 S.E. 263. There must be inducement by which one changes his position for the worse. Kennedy v. Manry, 6 Ga.App. 816(3), 66 S.E. 29. Injury is its essence. Ga.Code Sec. 38-116; Lynch v. Poole, supra; Baxley Hdw. Co. v. Morris, supra, indicates the conduct which estops a lessor to deny authority of the agent.

The evidence here supplies none of these things. If the lessee were misled by Mr. Meeks, it was through the fault of its representative who did not have the lease properly executed or attested. Mrs. Meeks misled nobody. She had nothing to do with her husband's signing her name to the lease. Within a reasonable time after learning of his act she disaffirmed it. During the interim the oil company undertook nothing upon the strength of the lease. The fact that the lease included the 106 acre tract caused the oil company to do nothing, so far as the evidence discloses, which it would not have done otherwise. There was no special expenditure by the lessee in reliance upon the inclusion of this tract in the lease. Indeed, for aught that appears, the same outlays would have been made by the lessee because of the other leases covering thousands of acres of land it had obtained from other landowners in the community, if there had been no lease from the Meeks family at all. Mrs. Meeks neither misled nor suffered the lessee to be misled as to ownership. The oil company lost nothing; Mrs. Meeks gained nothing, and the two do not add up to estoppel.

6. Breach by Lessee.

There remains the final urge that the whole lease has terminated by its terms. To keep the lease alive the lessee was obligated to commence drilling operations within twenty four months from the date of the lease or pay or tender to the lessor certain named rentals, and it is said neither has been done. As a general rule where one party renounces an executory contract and refuses to perform there is a tender of breach, and the other party, accepting, may have a cause of action at once. Roehm v. Horst, 178 U.S. 1, 20 S.Ct. 780, 44 L.Ed. 953; Phosphate Mining Co. v. Atlanta Oil & Fertilizer Co., 20 Ga.App. 660, 661, 93 S. E. 532; Borochoff v. William Muirhead Const. Co., 56 Ga.App. 519, 523, 193 S.E. 118. In some circumstances such anticipatory breach may excuse a tender of performance that would be an idle act. 17 C.J.S., Contracts, § 472, note 92; Edgar & Son v. Grocers' Wholesale Co., 8 Cir., 298 F. 878, 882. But if it can be said that the lessee did not accept the tender of the breach made by the lessor's disaffirmance and, therefore, was under the duty of paying the stipulated rentals of five cents per acre to keep the contract of force, the answer is that the les-

sor herself prevented. When the named depositary refused to accept a deposit of the rentals she, having repudiated the contract, declined to name another bank, and by the terms of the lease the lessee was not to be held in default until thirty days had elapsed after she named another. See Ansley v. Hightower, 120 Ga. 719(3), 48 S.E. 197. Lastly, the lessee did all that was possible under the circumstances. The rentals were placed in the registry of the court under an appropriate order. That was sufficient. The lease in so far as it is valid, has not terminated.

### Conclusions of Law.

1. The plaintiff is entitled to a decree cancelling the lease as to the 106 acre tract of land, always her separate estate.

2. No relief should be granted to her as to the other two tracts of land.

3. Costs should be equally divided.

Let a decree be presented.